# EXHIBIT 1

Court of Common Pleas of Philadelphia County
Trial Division

# Civil Cover Sheet

| | For Prothonotary Use Only (Docket Number) |
|---|---|
| | **DECEMBER 2024**        03018 |
| | E-Filing Number: 2412056589 |

| PLAINTIFF'S NAME | DEFENDANT'S NAME |
|---|---|
| YOSEF COHEN | TRUSTEES OF THE UNIVERSITY OF PENNSYLVANIA |

| PLAINTIFF'S ADDRESS | DEFENDANT'S ADDRESS |
|---|---|
| 61 WAR ADMIRAL LANE<br>MEDIA PA 19063 | OFFICE OF THE UNIVERSITY 1 COLLEGE HALL #211<br>PHILADELPHIA PA 19104 |

| PLAINTIFF'S NAME | DEFENDANT'S NAME |
|---|---|
| | J. LARRY JAMISON |

| PLAINTIFF'S ADDRESS | DEFENDANT'S ADDRESS |
|---|---|
| | UNIVERSITY OF PENNSYLVANIA 1 COLLEGE HALL #211<br>PHILADELPHIA PA 19104 |

| PLAINTIFF'S NAME | DEFENDANT'S NAME |
|---|---|
| | JOHN L. JACKSON |

| PLAINTIFF'S ADDRESS | DEFENDANT'S ADDRESS |
|---|---|
| | UNIVERSITY OF PENNSYLVANIA 1 COLLEGE HALL #211<br>PHILADELPHIA PA 19104 |

| TOTAL NUMBER OF PLAINTIFFS | TOTAL NUMBER OF DEFENDANTS | COMMENCEMENT OF ACTION | | |
|---|---|---|---|---|
| 1 | 9 | ☐ Complaint<br>☒ Writ of Summons | ☐ Petition Action<br>☐ Transfer From Other Jurisdictions | ☐ Notice of Appeal |

| AMOUNT IN CONTROVERSY | COURT PROGRAMS | | | |
|---|---|---|---|---|
| ☐ $50,000.00 or less<br>☒ More than $50,000.00 | ☐ Arbitration<br>☒ Jury<br>☐ Non-Jury<br>☐ Other: | ☐ Mass Tort<br>☐ Savings Action<br>☐ Petition | ☐ Commerce<br>☐ Minor Court Appeal<br>☐ Statutory Appeals | ☐ Settlement<br>☐ Minors<br>☐ W/D/Survival |

| CASE TYPE AND CODE |
|---|
| Z2 - MISC SUMMONS |

| STATUTORY BASIS FOR CAUSE OF ACTION |
|---|
| |

| RELATED PENDING CASES (LIST BY CASE CAPTION AND DOCKET NUMBER) | | IS CASE SUBJECT TO COORDINATION ORDER? |
|---|---|---|
| | **FILED**<br>**PRO PROTHY**<br>DEC **27** 2024<br>**L. BREWINGTON** | YES          NO |

TO THE PROTHONOTARY:

Kindly enter my appearance on behalf of Plaintiff/Petitioner/Appellant: <u>YOSEF COHEN</u>

Papers may be served at the address set forth below.

| NAME OF PLAINTIFF'S/PETITIONER'S/APPELLANT'S ATTORNEY | ADDRESS |
|---|---|
| ANDREW B. AUSTIN | PO BOX 54628<br>PHILADELPHIA PA 19148 |

| PHONE NUMBER | FAX NUMBER | |
|---|---|---|
| (610)656-1956 | none entered | |

| SUPREME COURT IDENTIFICATION NO. | E-MAIL ADDRESS |
|---|---|
| 323768 | austin@replev.in |

| SIGNATURE OF FILING ATTORNEY OR PARTY | DATE SUBMITTED |
|---|---|
| *ANDREW AUSTIN* | Friday, December 27, 2024, 01:44 pm |

**COMPLETE LIST OF DEFENDANTS:**

1. TRUSTEES OF THE UNIVERSITY OF PENNSYLVANIA
   OFFICE OF THE UNIVERSITY 1 COLLEGE HALL #211
   PHILADELPHIA PA 19104
2. J. LARRY JAMISON
   UNIVERSITY OF PENNSYLVANIA 1 COLLEGE HALL #211
   PHILADELPHIA PA 19104
3. JOHN L. JACKSON
   UNIVERSITY OF PENNSYLVANIA 1 COLLEGE HALL #211
   PHILADELPHIA PA 19104
4. CRAIG R.. CARNAROLI
   UNIVERSITY OF PENNSYLVANIA 1 COLLEGE HALL #211
   PHILADELPHIA PA 19104
5. KATHLEEN SHIELDS ANDERSON
   UNIVERSITY OF PENNSYLVANIA 1 COLLEGE HALL #211
   PHILADELPHIA PA 19104
6. GARY WILLIAMS
   UNIVERSITY OF PENNSYLVANIA 1 COLLEGE HALL #211
   PHILADELPHIA PA 19104
7. VALDO WALKER
   UNIV. OF PENN. POLICE DEP'T 4040 CHESTNUT STREET
   PHILADELPHIA PA 19104
8. PAUL GUERCIO
   UNIV. OF PENN. POLICE DEP'T 4040 CHESTNUT STREET
   PHILADELPHIA PA 19104
9. JOHN DOE #1-20
   UNIVERSITY OF PENNSYLVANIA 1 COLLEGE HALL
   PHILADELPHIA PA 19104



Filed and Attested by the
Office of Judicial Records
27 DEC 2024 01:44 pm
L. BREWINGTON

**Andrew B. Austin**, Esq.
Pennsylvania Bar # 323768
*Attorney for Yosef Cohen*

P.O. Box # 54628
Philadelphia, Pennsylvania, 19148
+1 (610) 656-1956
austin@replev.in

---

| | |
|---|---|
| Yosef **Cohen**,<br><br>*Plaintiff,*<br><br>*vs.*<br><br>Trustees of the **University of Pennsylvania**, J. Larry **Jameson**, John L. **Jackson** Jr., Craig R. **Carnaroli**, Kathleen **Shields Anderson**, Gary **Williams**, Valdo **Walker**, Paul **Guercio**, *and* John **Doe** # 1–20,<br><br>*Defendant(s).* | COURT OF COMMON PLEAS<br>PHILADELPHIA COUNTY<br><br>December Term, 2024<br><br>*No.* _____<br><br>JURY TRIAL DEMANDED |

---

## PRAECIPE TO ISSUE WRIT OF SUMMONS
## CIVIL ACTION

To the Office of Judicial Records:

    Kindly issue the attached Writ(s) of Summons to the Trustees of the University of Pennsylvania, J. Larry Jamison, John L. Jackson Jr., Craig R. Carnaroli, Kathleen Shields Anderson, Gary Williams, Valdo Walker, and Paul Guercio in the above-captioned matter.


Respectfully Submitted,


**Andrew B. Austin**, Esq.

COURT OF COMMON PLEAS OF PHILADELPHIA
FIRST JUDICIAL DISTRICT OF PENNSYLVANIA
TRIAL DIVISION – CIVIL

| | |
|---|---|
| Yosef **Cohen**,<br><br>*Plaintiff,*<br><br>*vs.*<br><br>Trustees of the **University of Pennsylvania**, J. Larry **Jameson**, John L. **Jackson** Jr., Craig R. **Carnaroli**, Kathleen **Shields Anderson**, Gary **Williams**, Valdo **Walker**, Paul **Guercio**, *and* John **Doe** # 1–20,<br><br>*Defendant(s).* | December Term, 2024<br><br>*No.* _____<br><br>JURY TRIAL DEMANDED |

## WRIT OF SUMMONS–CIVIL ACTION

To **Trustees of the University of Pennsylvania**:

You are hereby notified that Plaintiff Yosef Cohen has commenced an action against you.

*Usted esta avisado que el demandante Yosef Cohen ha iniciado una accion en contra suya.*

ERIC FEDER
*Director, Office of Judicial Records*

By: _____

Date: _____



## Court of Common Pleas
## Philadelphia County

December Term, 2024

*No.* _____

Yosef **Cohen**,

*Plaintiff,*

*vs.*

Trustees of the **University of Pennsylvania**,
J. Larry **Jameson**, John L. **Jackson** Jr., Craig
R. **Carnaroli**, Kathleen **Shields Anderson**,
Gary **Williams**, Valdo **Walker**, Paul **Guercio**,
*and* John **Doe** # 1–20,

*Defendant(s).*

# SUMMONS

Case ID: 241203018

COURT OF COMMON PLEAS OF PHILADELPHIA
FIRST JUDICIAL DISTRICT OF PENNSYLVANIA
TRIAL DIVISION – CIVIL

| | |
|---|---|
| Yosef **Cohen**,<br><br>*Plaintiff,*<br><br>*vs.*<br><br>Trustees of the  **University of Pennsylvania**, J. Larry **Jameson**, John L. **Jackson** Jr., Craig R. **Carnaroli**, Kathleen **Shields Anderson**, Gary **Williams**, Valdo **Walker**, Paul **Guercio,** *and* John **Doe** # 1–20,<br><br>*Defendant(s).* | December Term, 2024<br><br>*No.* _____<br><br>JURY TRIAL DEMANDED |

## WRIT OF SUMMONS–CIVIL ACTION

To **J. Larry Jameson**:

You are hereby notified that Plaintiff Yosef Cohen has commenced an action against you.
*Usted esta avisado que el demandante Yosef Cohen ha iniciado una accion en contra suya.*

ERIC FEDER
*Director, Office of Judicial Records*

By: _____

Date: _____



Case ID: 241203018

## Court of Common Pleas
## Philadelphia County

December Term, 2024

*No.* _____

Yosef **Cohen**,

*Plaintiff,*

*vs.*

Trustees of the **University of Pennsylvania**,
J. Larry **Jameson**, John L. **Jackson** Jr., Craig
R. **Carnaroli**, Kathleen **Shields Anderson**,
Gary **Williams**, Valdo **Walker**, Paul **Guercio**,
*and* John **Doe** # 1–20,

*Defendant(s).*

# SUMMONS

Case ID: 241203018

COURT OF COMMON PLEAS OF PHILADELPHIA
FIRST JUDICIAL DISTRICT OF PENNSYLVANIA
TRIAL DIVISION – CIVIL

| | |
|---|---|
| Yosef **Cohen**, | December Term, 2024 |
| *Plaintiff,* | *No.* _____ |
| *vs.* | JURY TRIAL DEMANDED |
| Trustees of the **University of Pennsylvania**, J. Larry **Jameson**, John L. **Jackson** Jr., Craig R. **Carnaroli**, Kathleen **Shields Anderson**, Gary **Williams**, Valdo **Walker**, Paul **Guercio**, *and* John **Doe** # 1–20, | |
| *Defendant(s).* | |

## WRIT OF SUMMONS–CIVIL ACTION

To **John L. Jackson, Jr.**:

    You are hereby notified that Plaintiff Yosef Cohen has commenced an action against you.
*Usted esta avisado que el demandante Yosef Cohen ha iniciado una accion en contra suya.*

ERIC FEDER
*Director, Office of Judicial Records*

By: _____

Date: _____



Case ID: 241203018

### Court of Common Pleas
### Philadelphia County

December Term, 2024

*No.* _____

Yosef **Cohen**,

*Plaintiff,*

*vs.*

Trustees of the **University of Pennsylvania**,
J. Larry **Jameson**, John L. **Jackson** Jr., Craig
R. **Carnaroli**, Kathleen **Shields Anderson**,
Gary **Williams**, Valdo **Walker**, Paul **Guercio**,
*and* John **Doe** # 1–20,

*Defendant(s).*

# SUMMONS

COURT OF COMMON PLEAS OF PHILADELPHIA
FIRST JUDICIAL DISTRICT OF PENNSYLVANIA
TRIAL DIVISION – CIVIL

| | |
|---|---|
| Yosef **Cohen**,<br><br>*Plaintiff*,<br><br>*vs.*<br><br>Trustees of the  **University of Pennsylvania**, J. Larry **Jameson**, John L. **Jackson** Jr., Craig R. **Carnaroli**, Kathleen **Shields Anderson**, Gary **Williams**, Valdo **Walker**, Paul **Guercio**, *and* John **Doe** # 1–20,<br><br>*Defendant(s)*. | December Term, 2024<br><br>*No.* _____<br><br>JURY TRIAL DEMANDED |

# WRIT OF SUMMONS–CIVIL ACTION

To **Craig R. Carnaroli**:

You are hereby notified that Plaintiff Yosef Cohen has commenced an action against you.
*Usted esta avisado que el demandante Yosef Cohen ha iniciado una accion en contra suya.*

ERIC FEDER
*Director, Office of Judicial Records*

By: _____

Date: _____



## Court of Common Pleas
## Philadelphia County

December Term, 2024

*No.* _____

Yosef **Cohen**,

*Plaintiff,*

*vs.*

Trustees of the **University of Pennsylvania**,
J. Larry **Jameson**, John L. **Jackson** Jr., Craig
R. **Carnaroli**, Kathleen **Shields Anderson**,
Gary **Williams**, Valdo **Walker**, Paul **Guercio**,
*and* John **Doe** # 1–20,

*Defendant(s).*

# SUMMONS

Case ID: 241203018

COURT OF COMMON PLEAS OF PHILADELPHIA
FIRST JUDICIAL DISTRICT OF PENNSYLVANIA
TRIAL DIVISION – CIVIL

| | |
|---|---|
| Yosef **Cohen**,<br><br>*Plaintiff,*<br><br>*vs.*<br><br>Trustees of the **University of Pennsylvania**, J. Larry **Jameson**, John L. **Jackson** Jr., Craig R. **Carnaroli**, Kathleen **Shields Anderson**, Gary **Williams**, Valdo **Walker**, Paul **Guercio**, *and* John **Doe** # 1–20,<br><br>*Defendant(s).* | December Term, 2024<br><br>*No.* _____<br><br>JURY TRIAL DEMANDED |

## WRIT OF SUMMONS–CIVIL ACTION

To **Kathleen Shields Anderson**:

You are hereby notified that Plaintiff Yosef Cohen has commenced an action against you.
*Usted esta avisado que el demandante Yosef Cohen ha iniciado una accion en contra suya.*

ERIC FEDER
*Director, Office of Judicial Records*

By: _____

Date: _____



## Court of Common Pleas
## Philadelphia County

December Term, 2024

*No.* _____

Yosef **Cohen**,

*Plaintiff,*

*vs.*

Trustees of the **University of Pennsylvania**,
J. Larry **Jameson**, John L. **Jackson** Jr., Craig
R. **Carnaroli**, Kathleen **Shields Anderson**,
Gary **Williams**, Valdo **Walker**, Paul **Guercio**,
*and* John **Doe** # 1–20,

*Defendant(s).*

# SUMMONS

Case ID: 241203018

COURT OF COMMON PLEAS OF PHILADELPHIA
FIRST JUDICIAL DISTRICT OF PENNSYLVANIA
TRIAL DIVISION – CIVIL

| | |
|---|---|
| Yosef **Cohen**, *Plaintiff*, | December Term, 2024 |
| *vs.* | *No.* _____ |
| Trustees of the **University of Pennsylvania**, J. Larry **Jameson**, John L. **Jackson** Jr., Craig R. **Carnaroli**, Kathleen **Shields Anderson**, Gary **Williams**, Valdo **Walker**, Paul **Guercio**, *and* John **Doe** # 1–20, *Defendant(s)*. | JURY TRIAL DEMANDED |

## WRIT OF SUMMONS–CIVIL ACTION

To **Gary Williams**:

    You are hereby notified that Plaintiff Yosef Cohen has commenced an action against you.

*Usted esta avisado que el demandante Yosef Cohen ha iniciado una accion en contra suya.*

ERIC FEDER
*Director, Office of Judicial Records*

By: _____

Date: _____



## Court of Common Pleas
## Philadelphia County

December Term, 2024

*No.* _____

Yosef **Cohen**,

*Plaintiff,*

*vs.*

Trustees of the **University of Pennsylvania**,
J. Larry **Jameson**, John L. **Jackson** Jr., Craig
R. **Carnaroli**, Kathleen **Shields Anderson**,
Gary **Williams**, Valdo **Walker**, Paul **Guercio**,
*and* John **Doe** # 1–20,

*Defendant(s).*

# SUMMONS

Case ID: 241203018

COURT OF COMMON PLEAS OF PHILADELPHIA
FIRST JUDICIAL DISTRICT OF PENNSYLVANIA
TRIAL DIVISION – CIVIL

| | | |
|---|---|---|
| Yosef **Cohen**, | | December Term, 2024 |
| *Plaintiff,* | | *No.* _____ |
| *vs.* | | |
| | | JURY TRIAL DEMANDED |
| Trustees of the **University of Pennsylvania**, J. Larry **Jameson**, John L. **Jackson** Jr., Craig R. **Carnaroli**, Kathleen **Shields Anderson**, Gary **Williams**, Valdo **Walker**, Paul **Guercio**, *and* John **Doe** # 1–20, | | |
| *Defendant(s).* | | |

## WRIT OF SUMMONS–CIVIL ACTION

To **Valdo Walker**:

You are hereby notified that Plaintiff Yosef Cohen has commenced an action against you.

*Usted esta avisado que el demandante Yosef Cohen ha iniciado una accion en contra suya.*

ERIC FEDER
*Director, Office of Judicial Records*

By: _____

Date: _____



Case ID: 241203018

## Court of Common Pleas
## Philadelphia County

December Term, 2024

*No.* _____

Yosef **Cohen**,

*Plaintiff,*

*vs.*

Trustees of the **University of Pennsylvania**,
J. Larry **Jameson**, John L. **Jackson** Jr., Craig
R. **Carnaroli**, Kathleen **Shields Anderson**,
Gary **Williams**, Valdo **Walker**, Paul **Guercio**,
*and* John **Doe** # 1–20,

*Defendant(s).*

# SUMMONS

Case ID: 241203018

COURT OF COMMON PLEAS OF PHILADELPHIA
FIRST JUDICIAL DISTRICT OF PENNSYLVANIA
TRIAL DIVISION – CIVIL

| | |
|---|---|
| Yosef **Cohen**, <br><br> *Plaintiff,* <br><br> *vs.* <br><br> Trustees of the **University of Pennsylvania**, J. Larry **Jameson**, John L. **Jackson** Jr., Craig R. **Carnaroli**, Kathleen **Shields Anderson**, Gary **Williams**, Valdo **Walker**, Paul **Guercio**, *and* John **Doe** # 1–20, <br><br> *Defendant(s).* | December Term, 2024 <br><br> *No.* _____ <br><br> JURY TRIAL DEMANDED |

## WRIT OF SUMMONS–CIVIL ACTION

To **Paul Guercio**:

You are hereby notified that Plaintiff Yosef Cohen has commenced an action against you.

*Usted esta avisado que el demandante Yosef Cohen ha iniciado una accion en contra suya.*

ERIC FEDER
*Director, Office of Judicial Records*

By: _____

Date: _____



Case ID: 241203018

## Court of Common Pleas
## Philadelphia County

December Term, 2024

*No.* _____

Yosef **Cohen**,

*Plaintiff,*

*vs.*

Trustees of the **University of Pennsylvania**,
J. Larry **Jameson**, John L. **Jackson** Jr., Craig
R. **Carnaroli**, Kathleen **Shields Anderson**,
Gary **Williams**, Valdo **Walker**, Paul **Guercio**,
*and* John **Doe** # 1–20,

*Defendant(s).*

# SUMMONS



Filed and Attested by the
Office of Judicial Records
09 JUN 2025 03:26 pm
G. IMPERATO

COURT OF COMMON PLEAS OF PHILADELPHIA

FIRST JUDICIAL DISTRICT OF PENNSYLVANIA

TRIAL DIVISION – CIVIL

|  |  |
|---|---|
| Yosef **Cohen**,<br><br>*Plaintiff,*<br><br>*vs.*<br><br>Trustees of the **University of Pennsylvania**, J. Larry **Jameson**, John L. **Jackson** Jr., Craig R. **Carnaroli**, Kathleen **Shields Anderson**, Gary **Williams**, Valdo **Walker**, Paul **Guercio**, *and* John **Doe** # 1–20,<br><br>*Defendant(s).* | October Term, 2024<br>*No.* 3018 |

### NOTICE

You have been sued in court. If you wish to defend against the claims set forth in the following pages, you must take action within twenty (20) days after the complaint and notice are served, by entering a written appearance personally or by attorney and filing in writing with the court your defenses or objections to the claims set forth against you. You are warned that if you fail to do so the case may proceed without you and a judgment may be entered against you by the court without further notice for any money claimed in the complaint or for any other claim or relief requested by the plaintiff. You may lose money or property or other rights important to you.

### AVISO

Le han demandado a usted en la corte. Si usted quiere defenderse de estas demandas expuestas en las páginas siguientes, usted tiene veinte (20) dias de plazo al partir de la fecha de la demanda y la notificación. Hace falta asentar una comparencia escrita o en persona o con un abogado y entregar a la corte en forma escrita sus defensas o sus objeciones a las demandas en contra de su persona. Sea avisado que si usted no se defiende, la corte tomará medidas y puede continuar la demanda en contra suya sin previo aviso o notificación. Además, la corte puede decidir a favor del demandante y requiere que usted cumpla con todas las provisiones de esta demanda. Usted puede perder dinero o sus propiedades u otros derechos importantes para usted.

1

*You should take this paper to your lawyer at once. if you do not have a lawyer or cannot afford one, go to or telephone the office set forth below to find out where you can get legal help.*

**PHILADELPHIA BAR ASSOCIATION**
Lawyer Referral and Information Service
1101 Market Street, 11th Floor
Philadelphia, Pennsylvania 19107
(215) 238-1701

*Lleve esta demanda a un abogado inmediatamente. si no tiene abogado o si no tiene el dinero suficiente de pagar tal servicio, vaya en persona o llame por telefono a la oficina cuya direccion se encuentra escrita abajo para averiguar donde se puede conseguir asistencia legal.*

**ASOCIACIÓN DE LICENCIADOS
DE FILADELFIA**
Servicio De Referencia E Información Legal
1101 Market Street, 11th Floor
Filadelfia, Pennsylvania 19107
(215) 238-1701

Case ID: 241203018

**Andrew B. Austin**, Esq.
Pennsylvania Bar # 323768
*Attorney for Yosef Cohen*

P.O. Box # 54628
Philadelphia, Pennsylvania, 19148
+1 (610) 656-1956
austin@replev.in

| | |
|---|---|
| Yosef **Cohen**,<br><br>*Plaintiff,*<br><br>*vs.*<br><br>Trustees of the **University of Pennsylvania**, J. Larry **Jameson**, John L. **Jackson** Jr., Craig R. **Carnaroli**, Kathleen **Shields Anderson**, Gary **Williams**, Valdo **Walker**, Paul **Guercio**, *and* John **Doe** # 1–20,<br><br>*Defendant(s).* | COURT OF COMMON PLEAS PHILADELPHIA COUNTY<br><br>October Term, 2024<br>*No.* 3018 |

# COMPLAINT

On October 7th 2023, Hamas terrorists committed a barbaric and unprovoked massacre of more than 1,200 innocent civilians and dragging of hundreds of men, women, and children into captivity as hostages, compelling Israel to launch a necessary war of self-defense. In the wake of this conflict, a virulent and underlying antisemitism erupted on college campuses, bringing a deep-seated and latent animus into public view.

The University of Pennsylvania was at the center this national firestorm, where the administration not only allowed– but actively created– a hostile antisemitic environment. The was starkly exemplified by the Gaza Solidarity Encampment ("Encampment"), a weeks-

long demonstration on Penn's campus, where calls for violence both against Jews and the destruction of Israel were legitimized and protected by the University of Pennsylvania administration.

In support of this, the University of Pennsylvania Police Department ("Penn Police") was selectively weaponized by the administration to intimidate, threaten, and ultimately remove peaceful Jewish counterprotestors from campus and thereby enforce the administration's preferred narrative and silence any dissent. But compounding this problem, the Penn Police are not permitted to act as police officers in Pennsylvania, yet usurped the powers of legitimate law enforcement, claiming to operate under color of law to detain, threaten, and arrest citizens, despite lacking any necessary statutory authority to do so.

This policy of selective enforcement was ultimately weaponized against the Plaintiff, Yosef Cohen.  On April 28th 2024, he was pretextually arrested under an unconstitutional city ordinance that had previously been declared unenforceable by Judge Savage of the Eastern District of Pennsylvania. While the charges were ultimately dismissed by the Municipal Court, this illegal arrest had already served its intended purpose: to punish Mr. Cohen for the being a proud Jewish and Israeli-American, and for expressing a legitimate and righteous viewpoint in favor of his race, religion, and national origin, all of which were disfavored by the University.

Therefore, Mr. Cohen avers as follows:

Case ID: 241203018

# PARTIES

1. Plaintiff Yosef **Cohen** is a resident and citizen of the Commonwealth of Pennsylvania, residing in Media. Mr. Cohen is Jewish both ethnically and by faith, and a dual American-Israeli citizen.

2. Defendant Trustees of the **University of Pennsylvania** ("University of Pennsylvania") is a private university, organized under the laws of Pennsylvania and located in Philadelphia, Pennsylvania. The Pennsylvania Department of Education ("Department") has approved the University of Pennsylvania as a public higher education institution with a universal charter, meaning its educational programs are not subject to approval by the Department. The University of Pennsylvania has previously received some state funding in support of its Veterinary School, however does **not** qualify as 'state-aided' pursuant to Department regulation and Commonwealth law.

3. The University of Pennsylvania "Police Department" ('Penn Police') is a security agency for University of Pennsylvania. Penn Police claim to be "campus police" with law enforcement powers under 71 P.S. § 646–646.1 (campus police). However, as explained below, Penn Police do not– and have never– qualified to act as campus police, because the University of Pennsylvania is not a 'state-aided' school. All references to Penn Police as a "police department" or its "officers" are used for description only, as that is how the Penn Police improperly– and unlawfully– hold themselves out to be; No references imply any admission or acknowledgment that any officer or department has any authority to act as a police officer or the Penn Police are authorized to act as a police department.

3

Case ID: 241203018

4.   Defendant J. Larry **Jameson**, is President of the University of Pennsylvania, appointed on an interim status on or about December 11th 2023 and later named permanently this year. Defendant Jameson replaced the former university President Liz MacGill, who resigned in disgrace after refusing to condemn antisemitism on University of Pennsylvania's campus before Congress on December 5th 2023. At all time relevant hereto, Defendant Jameson exercised ultimate authority over the University of Pennsylvania's response to the Encampment. In this capacity, he formulated, directed, and/or ratified the discriminatory policies guiding the University's actions on campus, including the decision to discriminate against disfavored viewpoints and individuals like Mr. Cohen at the Encampment.

5.   Defendant John L. **Jackson** Jr., is Provost of the University of Pennsylvania. As Provost, Defendant Jackson is the University's chief academic officer, with broad authority over all academic programs, faculty, and student affairs. His responsibilities include overseeing student conduct and managing the use of University spaces, such as College Green where the Encampment occurred. At all times relevant hereto, Defendant Jackson was directly monitoring, formulating, directing, and/or ratifying the University of Pennsylvania's response as an integral part of its command structure that ultimately authorized and directed the University's discriminatory policies that resulted in Mr. Cohen's unlawful arrest.

6.   Defendant Craig R. **Carnaroli**, was Senior Executive Vice President of the University of Pennsylvania. As Senior Executive Vice President, Defendant Carnaroli was the University's chief administrative and operational officer, with broad authority over its budget, facilities, and non-academic operations. His responsibilities included direct oversight of the Division of Public Safety and, by extension, it's "Police Department", as well as managing the physical campus spaces where the Encampment occurred. At all times relevant hereto, Defendant Carnaroli was directly monitoring, formulating, directing, and/or ratifying the

4

Case ID: 241203018

University of Pennsylvania's response as an integral part of its command structure that ultimately authorized and directed the University's discriminatory policies that resulted in Plaintiff's unlawful arrest.

7. Defendant Kathleen **Shields Anderson**, is Vice President for Public Safety at the University of Pennsylvania. As Vice President for Public Safety, Defendant Shields Anderson is the lead executive with control and oversight over the Division of Public Safety, which includes the University's "Police Department". At all times relevant hereto, Defendant Shields Anderson was directly monitoring, formulating, directing, and/or ratifying the University of Pennsylvania's response as an integral part of its command structure that ultimately authorized and directed the University's discriminatory policies that resulted in Plaintiff's unlawful arrest.

8. Defendant Gary **Williams**, is former Chief of Penn Police until September 2024, when he transitioned to become 'Director of Community Outreach and Engagement' for the Department of Public Safety. As Chief of Penn Police, he was the senior officer responsible for all operational planning and tactical command of the department. At all times relevant hereto, his responsibilities included overseeing, supervising and training of his employees, and developing operational plans for the University's response to demonstrations, while ensuring the constitutional and civil rights of all persons are protected. However, instead, Mr. Williams implemented the administration's discriminatory directives, implementing an enforcement strategy that selectively targeted Jewish counter-protesters and directly resulted in the unlawful arrest of Plaintiff.

9. Defendants Jameson, Jackson, Carnaroli, Shields Anderson, and Williams are later referred to collectively as the University Defendants.

5

Case ID: 241203018

10. Defendant Valdo **Walker**, is a "Detective" of Penn Police (badge # 75). On April 28th 2024, Mr. Walker was on-duty at the Encampment and was the arresting "officer" for Mr. Cohen's false arrest. However, Mr. Walker has no statutory authority to act as a police officer or with any law enforcement powers under Pennsylvania law.

11. Defendant Paul **Guercio**, is a "Detective-Sergeant" ' of Penn Police (badge # 71). On April 28th 2024, Mr. Guercio was on-duty at the Encampment and is also listed as the arresting "officer" for Mr. Cohen's false arrest. However, Mr. Guercio has no statutory authority to act as a police officer or with any law enforcement powers under Pennsylvania law.

12. Defendants John **Doe** # 1–20, are the fictitious names of individuals who are heretofore unknown employees of the University of Pennsylvania. At all times relevant hereto, the Doe Defendants were acting as "officers" and/or directly supervised officers on duty at the Encampment on April 28th 2024. These Defendants participated in– or supervised– Mr. Cohen's false arrest. However, these Defendants have no statutory authority to act as police officers or with any law enforcement powers under Pennsylvania law.

13. Defendants Walker, Guercio, and Does are later referred to collectively as the Penn Police Defendants.

## JURISDICTION & VENUE

14. This Court has unlimited original jurisdiction, and venue is proper as the cause of action arose in this judicial district. 42 Pa. C.S. § 931, Pa. R.C.P. 1006.

15. Defendants are all further subject to the personal jurisdiction of this Court, as service of Writ of Summons was previously accomplished upon all Defendants at their principal places of business.

6

Case ID: 241203018

## FACTUAL BACKGROUND

16. On October 7th 2023, Hamas terrorists invaded Israel, killing thousands and taking hundreds captive.  In response, Israel initiated a war of self-defense, seeking to eliminate terrorists within both Israel and Gaza and recover the hostages or their remains.  That mission continues to this day, with dozens of persons still held hostage nearly two years later.

17. Unexpectedly, Israel's acts to defend itself from aggression and terrorism caused a virulent upwelling of antisemitism in the United States, which coalesced on college campuses, including the Defendant University of Pennsylvania.

18. Unknown to the public, the University of Pennsylvania had become a hotbed of covert antisemitism, throughout its student body, faculty and administration.  Persons of Jewish faith or ethnicity were actively discriminated against at the University of Pennsylvania, actively harassed, and made to feel unsafe.

19. After Israel invaded Gaza, overt antisemitism not only became normalized on campus, but was being endorsed by University of Pennsylvania faculty and its leadership.  As one example of many, former University of Pennsylvania President Liz MacGill refused to condemn calls for violence against Jews in testimony before Congress, claiming that calls for the **genocide of all Jews** would **not** violate the university's code of conduct.

20. While President MacGill resigned after trying to salvage her job after public outcry, her departure did not fix the problem of antisemitism at the University of Pennsylvania.  While the university overtly made advances designed to placate the growing discontent and illegal discrimination at the University of Pennsylvania, the actions of the university show the

Case ID: 241203018

university was merely trying to hide the rampant antisemitism (*e.g.* in March 2024, when a group of faculty sued to prevent the University from disclosing documents to a Congressional inquiry into campus antisemitism).

21. This came to a head on April 25th 2024, when a group of pro-Palestinian protesters set up an encampment on Penn College Green ('Encampment'). Hundreds of protesters with Palestinian flags, and antisemitic signs invaded the University of Pennsylvania's campus, ultimately ending up on the university's College Green.

22. These protesters were **joined** by University of Pennsylvania faculty, who were also engaging in a 'walk-out' in support of Gaza, some of whom made speeches to the crowd in favor of the Gazan resistance.

23. This initial protest lasted all afternoon, and ultimately resulted in the protesters setting up camp, moving tents and tarps in, while the University of Pennsylvania stopped both the Philadelphia Police and its employees from taking any action to evict the trespassers.

24. The next day, President Jameson, Provost Jackson, and Mr. Carnaroli sent an email to the Penn Community, advising everyone they were "closely monitoring the encampment" and pledged "follow-up action as appropriate." A second email that same day ordered the protesters to "disband the encampment immediately" noting that it violating Penn's policies, and that the observed "harassing and intimidating conduct" also violated both state and federal laws.

25. The encampment did not disband, but instead grew and organized larger events. These events were rabidly antisemitic, routinely calling for both the destruction of Israel and for the genocide of all Jewish people.

Case ID: 241203018

26. Instead, upon information and belief, President Jameson, Provost Jackson, and the other University Defendants created and implemented a plan of permissive inaction towards the Encampment and its organizers: the university's Department of Public Safety, including Penn Police, were instructed to merely contain the encampment and take no action towards the Encampment members—even to enforce the law.

27. During this period, President Jameson and Provost Jackson were in ultimate control of the Penn's response to the encampment, including its security and police response, controlled the law enforcement activities of their employees via Ms. Shield Anderson who headed the Division of Public Safety and Mr. Williams, then-Chief of Penn Police.

28. In particular, upon information and belief, the University Defendants further created and implemented a plan to allow the Encampment protesters a voice, while actively deterring persons not affiliated with the encampment, specifically including counterprotestors, from being heard on College Green. Those denied a voice—and thus intentionally and discriminatory disfavored—specifically included any person not supporting the pro-Palestinian narrative, including those who opposed calls for Jewish genocide or the destruction of Israel. Specifically, this must include any persons who were ethnically– or religiously– Jewish, as well as any persons of Israel citizenship or origin.

29. For fifteen days, the University Defendants knowingly permitted the Encampment to remain on College Green in open defiance of University policy and its own direct order to disband. During this time, Encampment participants continuously violated state law and University policy without consequence, including ongoing trespass and vandalism.

Case ID: 241203018

30.  The Encampment also became a locus of antisemitic and threatening rhetoric that created a pervasively hostile environment. Protesters repeatedly broadcast chants widely understood to call for violence against Jews and the destruction of Israel, including calls for "Intifada," which commonly is used to refer to a violent uprising against Israeli civilians and soldiers.

31.  This policy of deliberate inaction emboldened the protesters to escalate their illegal conduct. This culminated on the evening of May 9, 2024, when protesters attempted to occupy Fisher-Bennett Hall, forcing their way into the building.

32.  It was only after this forcible building takeover, and after fifteen days of uninterrupted violations of law and policy, that the University of Pennsylvania finally requested Philadelphia Police intervention to clear the Encampment. This permissive tolerance stood in stark contrast to the swift and punitive action taken against the Plaintiff.

33.  This policy of permissive inaction was not a momentary lapse, but a sustained and deliberate course of conduct by the University of Pennsylvania. While the most flagrant violations—such as the occupation of a university building—would occur later, the University's policy of tolerating the Encampment's illegal conduct was firmly established from its very first day and was the operational reality on April 28th 2024.

34.  On Sunday, April 28th 2024, a pro-Israel counterprotest was organized, but was forced to organize approximately one block away and separated from the Encampment by several buildings. This protest immediately faced greater resistance from the University of Pennsylvania than the Encampment. The Jewish counterprotest was greatly restricted in where it could go and actively deterred from being on campus, with the university moving in its Department of Public Safety, including Penn Police, to place barricades and corral the Jewish coun-

Case ID: 241203018

terprotestors back (and ultimately off campus). This disparity in the university's response reflected the university's disfavored opinion of those of Jewish race, religion, or Israeli national origin, and the favored opinion of those in support of Palestinian.

35. That afternoon, Mr. Cohen had independently traveled to College Green to counterprotest against the encampment, and he arrived at approximately 4 p.m.

36. Mr. Cohen began to peacefully walk around while wearing a blue untucked pro-Israel t-shirt (the Israeli flag surrounded by the words: 'I stand with Israel"). He was lawfully carrying a sheathed knife, which was concealed underneath the untucked shirt.

37. Almost immediately upon arrival at the Encampment, Mr. Cohen was approached by multiple Penn Police officers, including Defendant Walker, who began questioning him. Mr. Cohen told the officers he was here to counterprotest and peacefully engage with the protesters.

38. The Penn Police officers attempted to deny him access to College Green, claiming it was 'unsafe'. Mr. Cohen asked if they were not allowing him to enter, which they denied, and Mr. Cohen asserted he had a right to protest and began to walk into the Encampment.

39. The Penn Police officers refused to leave Mr. Cohen, but instead began to walk with him, even when he asked why they were following him. The officers claimed they were escorting him "for his safety". However, there were no threats to Mr. Cohen safety, which he told the officers, who refused to leave.

40. Thereafter, Mr. Cohen began to walk around the Encampment, engaging verbally with the protesters both by discussion, calm argument, and other protected speech. During this entire time, he was followed closely by Penn Police, who were acting as an unwilling escort to Mr. Cohen in an attempt to intimidate him into abandoning his first amendment expression.

11

Case ID: 241203018

41.  During this entire period, Mr. Cohen was lawfully wearing his knife, concealed in its sheath under his untucked t-shirt. However, one of the Penn Police officers spotted the knife, and unlawfully seized it, and Mr. Cohen was immediately arrested.

42.  Mr. Cohen was escorted off the grounds by multiple Penn Police officers, searched to reveal a second utility knife which was also unlawfully seized, placed into handcuffs, and taken into custody. He was then placed into a Penn Police vehicle and transported to Penn Police's station.

43.  At the station, Mr. Cohen was uncuffed and held for roughly three hours, before a summary citation was issued for carrying the knife under the Philadelphia Code § 10-820 (knife ban), and he was released. As will be explained below, the Philadelphia knife ban was unconstitutional and enjoined from enforcement by our federal court.

44.  Subsequently, Mr. Cohen retained counsel to contest the citation in Philadelphia Municipal Court.

45.  On June 27th 2024 at the initial trial date, the District Attorney received a continuance after being provided with the judgment and relevant order enjoining the Philadelphia Knife Ban, however the District Attorney—for unknown reasons—did not have the charges dismissed.

46.  Thereafter, it was scheduled for trial on August 8th 2024, where Mr. Cohen's counsel successfully had the charges dismissed *with prejudice* on the basis that the ordinance had already been stricken and enjoined by Judge Savage.

47.  Mr. Cohen is an outspoken defender of Israel, and proud Jew. He particularly believes that college campuses must provide a viewpoint neutral place for discourse. Further, he actively opposes any institution that are– or support in any way– antisemitic viewpoints.

Case ID: 241203018

48. Given the ongoing antisemitic strife in our country, Mr. Cohen anticipates counterprotesting in the future—including on University of Pennsylvania's campus. However, Mr. Cohen legitimately fears that protesting on University of Pennsylvania's campus would result in another illegal arrest by the Penn Police.

# LEGAL BACKGROUND

### *The Unconstitutional Philadelphia Knife Ban*

49. Relevant hereto, the City of Philadelphia had previously attempted to ban any person—except members of the Fire Department—from carrying any 'cutting weapon' within Philadelphia. *See* Phila. Code. § 10-820.

50. In May 2023, multiple plaintiffs challenged this ordinance in the U. S. District Court for the Eastern District of Pennsylvania. *Gilson, et al. v. Philadelphia*, *No.* 2:23-cv-01734 (E.D. Pa. Jul 18, 2023).

51. Instead of answering the complaint, the City of Philadelphia conceded that its Knife Ban was unconstitutional, and made an offer of judgment, which the plaintiffs accepted.

52. On July 18th 2023, Judge Savage entered judgment in favor of plaintiffs and permanently enjoined enforcement of the knife ban. *See* Order, *id.* (attached as *Exhibit A*).

### *Penn Police's Unlawful Exercise of Police Powers*

53. Penn Police claim to operate as 'campus police' pursuant to 71 P.S. §§ 646–646.1 (allowing "the Security or Campus Police of all State colleges and universities, State aided or related colleges and universities" to act as police officers in their municipalities).

13

54. However, under Pennsylvania law, "[s]tate aided or related" has specific meaning: just because a college or university receives a state appropriation does not make it state-aided. *Snyder v. Commonwealth*, 640 A.2d 490, 492–93 (Pa. Cmwlth. 1994) (en banc) ("We do not believe, however, that proving that [state] money was appropriated to [the university] established that it is as 'state-aided' university.")

55. Instead, "State aided or related colleges and universities" must comply with Pennsylvania Department of Education rules to qualify for that status. *Id*. (discussing 22 Pa. Code § 31.2 *et seq.*).

56. A threshold– and mandatory– requirement for any college or university to prove it is 'state-aided' is to have a signed 'articles of agreement' with the Department, which details eligibility, duties, and obligations of the school as a state-aided institution. *See Snyder*, 640 A.2d at 492–93.

57. The University of Pennsylvania does not have articles of agreement (or any similar document) with the Department.

58. Relevant hereto, the University of Pennsylvania did not have articles of agreement with the Department on April 28th 2024.

59. The University of Pennsylvania does not– and did not– qualify as a "State-aided" college or university. 71 P.S. §§ 646-646.1

60. Therefore, University of Pennsylvania is not a "State college [or] universit[y], … [State-]related college[] or universit[y] [or] community college[]." *Id*

61. Because University of Pennsylvania is not a state-aided or related college or university, Penn Police are not 'campus police' pursuant to *Id*.

Case ID: 241203018

62. Next, Penn Police are also not "private policeman" under 22 Pa. C.S. § 501 (authorizing the Court of Common Pleas to appoint persons to "act as policemen" for a nonprofit corporation), because Penn Police officers do not have appointments from this Court.

63. Nor is there any other Pennsylvania law that authorized Penn Police to act as a law enforcement agency or grants Penn Police officers law enforcement powers within this Commonwealth.

64. As a result, Penn Police do not have authority to act as law enforcement officers in Pennsylvania, and further do not have any of the powers granted to police officers, including, *inter alia* the power to detain, arrest, or file criminal complaints or issue summons.

65. However, at all times relevant hereto, Penn Police have unlawfully held themselves out to be law enforcement officers. *See* 18 Pa. C.S. § 4912.

66. Further, despite having no law enforcement powers, Penn Police have– and did– detain, arrest, file criminal complaints and issue summonses to persons, including Mr. Cohen.

67. As a direct and proximate result of the Defendants' actions, Mr. Cohen suffered economic and non-economic harm, including but not limited to, being forced to retain an attorney to defend a frivolous criminal charge, mental anguish and humiliation, and injury to his reputation.

Case ID: 241203018

# LEGAL COUNTS

## Count # 1
## Pennsylvania Civil Rights Violations
42 Pa. C.S. § 8309

68.  Plaintiff incorporates paragraphs ¶¶ 1–67 as if fully set forth herein.

69.  To establish a Pennsylvania civil rights violation, a plaintiff must show: (1) A person incurred injury, and (2) as the result of conduct constituting ethnic intimidation under 18 Pa. C.S. § 2710. 42 Pa. C.S. § 8309.

70.  To establish prohibited conduct under Section 2710, a plaintiff must show: (1) an actor committed an offense under *Id*. §§ 2301–3220, (2) with malicious intent towards the race, color, religion, or national origin of another individual, and (3) against that individual.

71.  The Penn Police Defendants caused Mr. Cohen harm, by committing the offenses of assault, battery, and false imprisonment against him.

72.  Assault, battery and false imprisonment are all predicate offenses under Section 2710.

73.  The Penn Police Defendants acted with malice toward Mr. Cohen because of his race, religion, and national origin.

Case ID: 241203018

## Count # 2
## False Arrest/Imprisonment

*Gagliardi v. Lynn*, 285 A.2d 109, 111 (Pa. 1971)

74.   Plaintiff incorporates paragraphs ¶¶ 1–67 as if fully set forth herein.

75.   To establish a false imprisonment/arrest claim, a plaintiff must show: (1) an actor acts with the intent, (2) to confine another person, (3) within boundaries fixed by the actor, (4) which directly or indirect results in confinement of the other, and (5) who is conscious of the confinement and is harmed by it. *Gagliardi v. Lynn*, 285 A.2d 109, 111 (Pa. 1971).

76.   The Penn Police Defendants detained, handcuffed, and arrested Mr. Cohen.

77.   These actions were intended to confine Mr. Cohen.

78.   Mr. Cohen was not free to depart the area the Penn Police Defendants held him.

79.   He was then transported by the Penn Police Defendants to the Penn Police station in handcuffs, and held in custody for several hours.

80.   The Penn Police Defendants fixed the boundaries of Mr. Cohen's confinement.

81.   Mr. Cohen was directly confined by the Penn Police Defendants.

82.   Mr. Cohen was both aware of his confinement and harmed by it.

83.   Penn Police Defendants had no privilege or excuse to confine Mr. Cohen.

84.   Where a tortuous action is committed upon the direction of a supervisor or corporate officer, liability attaches to the person directing the tort. *Wicks v. Milzoco Builders*, 470 A.2d 86, 90 (Pa. 1983).

Case ID: 241203018

85. The tortuous acts of the Penn Police Defendants were not solely the product of their own initiative, but rather the result of the discriminatory policies and directives issued by the University Defendants.  The discriminatory directives formulated, authorized, and/or ratified by the University Defendants directly caused Penn Police to target persons as a result of their race, religion, or national origin.

86. By commanding the specific actions that constituted the unlawful arrest, assault, and battery of Mr. Cohen, the University Defendants are also liable for the harm he suffered.

87. An employer is also responsible for the acts of its employees, even where the employee commits an intentional tort, if the conduct is within the expected scope of employment. *Costa v. Roxborough Memorial Hosp.*, 708 A.2d 490, 493 (Pa. Super. 1998).

88. Here, the Penn Police Defendants acted in conformance with– and at the direction of– their employer, the University of Pennsylvania, expectation that some disfavored individuals at the protest would be detained and taken into custody.

89. Therefore, the University of Pennsylvania is jointly and severally liable for the acts of the Penn Police Defendants.

## Count # 3
## Battery
*Herr v. Booten*, 580 A.2d 1115, 1119 (Pa. Super. 1990)

90. Plaintiff incorporates paragraphs ¶¶ 1–67 as if fully set forth herein.

91. To establish a battery claim, a plaintiff must show: (1) an actor intends to cause, (2) a harmful or offensive contact, and (3) with a person without his consent.. *Herr v. Booten*, 580 A.2d 1115, 1119 (Pa. Super. 1990)

18

Case ID: 241203018

92. The Penn Police intentionally caused Mr. Cohen to be placed into handcuffs.

93. A bodily contact is offensive if it offends a reasonable sense of personal dignity. *See* Restatement (Second) of Torts § 19.

94. Being handcuffed is inherently both harmful and offensive contact.

95. Where a tortuous action is committed upon the direction of a supervisor or corporate officer, liability attaches to the person directing the tort. *Wicks*, 470 A.2d at 90.

96. The tortuous acts of the Penn Police Defendants were not solely the product of their own initiative, but rather the result of the discriminatory policies and directives issued by the University Defendants. The discriminatory directives formulated, authorized, and/or ratified by the University Defendants directly caused Penn Police to target persons as a result of their race, religion, or national origin.

97. By commanding the specific actions that constituted the unlawful arrest, assault, and battery of Mr. Cohen, the University Defendants are also liable for the harm he suffered.

98. An employer is also responsible for the acts of its employees, even where the employee commits an intentional tort, if the conduct is within the expected scope of employment. *Costa*, 708 A.2d at 493.

99. Here, the Penn Police Defendants acted in conformance with– and at the direction of– their employer, the University of Pennsylvania, expectation that some disfavored individuals at the protest would be detained and taken into custody.

100. Therefore, the University of Pennsylvania is jointly and severally liable for the acts of the Penn Police Defendants.

Case ID: 241203018

Count # 4
## Malicious Prosecution

*McKibben v. Schmotzer*, 700 A.2d 484, 492 (Pa. Super. 1997)

101.  Plaintiff incorporates paragraphs ¶¶ 1–67 as if fully set forth herein.

102.  Plaintiff brings this count of malicious prosecution against Defendants University of Pennsylvania, Guercio, and Walker only.

103.  To establish a claim of malicious prosecution, a plaintiff must show: (1) an actor initiated a criminal proceeding, (2) that ended in the plaintiff's favor, (3) without probable cause, and (4) for a purpose other than bringing the plaintiff to justice. *McKibben v. Schmotzer*, 700 A.2d 484, 492 (Pa. Super. 1997).

104.  Defendants Walker and Guercio instituted criminal charges against Mr. Cohen.

105.  The charges brought by Defendants Walker and Guercio were for an unconstitutional City ordinance that had been declared unenforceable by a federal court.

106.  Because the ordinance was unconstitutional and unenforceable, the Philadelphia Municipal Court dismissed the charges *with prejudice*.

107.  It is impossible to have probable cause to charge someone under an unconstitutional and unenforceable statute, therefore Mr. Cohen was charged without probable cause.

108.  Further or in the alternative, as Penn Police nor its officers do not have any statutory law enforcement powers under Pennsylvania law, they could not have probable cause to charge anyone with any offense, but were required to submit a Private Criminal Complaint to the District Attorney as any other private individual must.

Case ID: 241203018

109. It is impossible to bring someone to justice for something that isn't a crime, therefore Mr. Cohen was charged by Defendants Walker and Guercio for a purpose other than bringing him to justice.

110. In the alternative, Mr. Cohen was charged by Defendants Walker and Guercio to interfere with his lawful and constitutionally protected right to counter-protest, which is a purpose other than for bringing him to justice.

111. An employer is also responsible for the acts of its employees, even where the employee commits an intentional tort, if the conduct is within the expected scope of employment. *Costa*, 708 A.2d at 493.

112. Here, Defendants Walker and Guercio acted in conformance with– and in furtherance of– the duties expected of them by the University of Pennsylvania and Penn Police.

113. Therefore, the University of Pennsylvania is jointly and severally liable for the acts of the Penn Police Defendants.

Case ID: 241203018

Count # 5

## Negligence

*Krentz v Conrail*, 910 A.2d 20, 28 (Pa. 2006)

114. Plaintiff incorporates paragraphs ¶¶ 1–67 as if fully set forth herein.

115. Plaintiff brings this count of negligence against the Defendant University of Pennsylvania, and the University Defendants only.

116. To establish a claim of negligence, a plaintiff must show: (1) an actor had a duty to conform to a certain standard of conduct, (2) the actor breached that duty, (3) such breach caused the injury in question, and (4) the plaintiff incurred damage. *Krentz v Conrail*, 910 A.2d 20, 28 (Pa. 2006).

117. Both the Defendant University of Pennsylvania and the University Defendants had a basic and fundamental duty to ensure that any entity it held out to the public as a "police department" possessed the actual and unequivocal statutory authority to act as a law enforcement agency under Pennsylvania law.

118. The University Defendants also had a duty to ensure that any security personnel they deployed into a foreseeable and volatile protest environment were properly trained and supervised to protect the rights of all individuals present.

119. This duty included, at a minimum, training its security personnel to: (a) act in a viewpoint-neutral and non-discriminatory manner; (b) understand the strict legal limits of their authority as private employees, including that they have no power to arrest for municipal code violations; and (c) de-escalate conflict rather than intimidate persons engaged in protected speech.

22

Case ID: 241203018

120. In the alternative, if the Penn Police were found to be legitimate law enforcement officers, the University Defendants still had a duty to ensure they were properly trained and supervised to engage in constitutional, non-discriminatory policing and to respect the civil rights of all persons.

121. The University Defendants breached these duties.

122. They breached their primary duty by creating, funding, and deploying the Penn Police, a security force that they knew or should have known lacked the statutory authority to act as police officers in Pennsylvania.

123. They breached their duty of care by failing to provide adequate training to their security personnel on non-discrimination, the limits of their private authority, and proper de-escalation techniques for a protest environment.

124. Alternatively, they breached their duty to ensure constitutional policing by failing to train and supervise their officers on non-discriminatory enforcement and the protection of civil rights.

125. These breaches were the direct and proximate cause of the injuries suffered by Mr. Cohen.

126. But for the University Defendants' negligence in operating an unauthorized police force and failing to train its personnel on their lack of authority, the Penn Police Defendants would not have held themselves out as police officers and would not have committed the torts of assault, battery, and false arrest against Mr. Cohen.

127. But for the University Defendants' negligent failure to train their personnel in non-discriminatory conduct, they would not have selectively targeted Mr. Cohen for enforcement while allowing the Encampment to persist.

Case ID: 241203018

128. As a direct result of the University Defendants' negligence, Mr. Cohen suffered damages, including the loss of his liberty, emotional distress and humiliation, the deprivation of his property, and the costs associated with defending against a baseless citation.

129. An employer is responsible for the negligence of its employee if committed during the course of– and within the scope of– the employee's employment. *Costa*, 708 A.2d at 493.

130. Here, the University Defendants were acting both in the course of– and within the scope of– their employment.

131. Therefore, the University of Pennsylvania is jointly and severally liable for the negligent acts of the University Defendants.

## Count # 6
## **Declaratory Judgment**
### 42 Pa. C.S. § 7531 *et seq.*

132. Plaintiff incorporates paragraphs ¶¶ 1–67 as if fully set forth herein.

133. The purpose of a declaratory judgment is to "declare rights, status, and other legal relations whether or not further relief is or could be claimed." *Id*. § 7532.

134. The University of Pennsylvania is purporting to operate Penn Police as "campus police" under *See* 71 P.S. §§ 646–646.1.

135. Yet the University of Pennsylvania is not a 'state-aided' college or university as it does not comply with the necessary requirements under state law. *Snyder*, 640 A.2d at 183–185.

136. If the University of Pennsylvania is not 'state-aided', Penn Police are not authorized to act as "campus police". *Id.*

Case ID: 241203018

137.  Therefore, this Court should declare that Penn Police were not– and are not– authorized to act as police officers or exercise any law enforcement powers under Section 646 and permanently enjoin the Penn Police from illegally acting as police officers.

# JURY DEMAND

For any issues so triable, Mr. Cohen demands a jury trial.

# RELIEF REQUESTED

**WHEREFORE**, Plaintiff Yosef Cohen respectfully requests this Court enter judgment in his favor and against all Defendants in an amount of greater than $ 50,000 inclusive of compensatory and punitive damages, attorneys' fees (inclusive of fees incurred in defending the criminal matter), and costs of suit, and any further relief requested– or allowed— that this Court may deem just and proper.  Further, Mr. Cohen also respectfully requests this Court declare that the University of Pennsylvania Police Department are not "campus police" pursuant to *Id*, do not have law enforcement powers under Pennsylvania law, and permanently enjoin University of Pennsylvania from holding themselves out as– or acting as– 'police officers' or a 'police department' or enforcing any laws of this Commonwealth in excess of that allowed to a private individual.

Case ID: 241203018

Respectfully Submitted,

**Andrew B. Austin**, Esq.
Pennsylvania Bar # 323768
*Attorney for Yosef Cohen*

P.O. Box # 54628
Philadelphia, Pennsylvania, 19148
+1 (610) 656-1956
austin@replev.in

26

Case ID: 241203018

# EXHIBIT A

Order Enjoining Enforcement of Knife Ban

Case ID: 241203018

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **ROSS GILSON, TERRENCE LEDWELL, VERN LEI, EDWARD MCBRIDE, and SALVATORE SANTUCCI** | : | **CIVIL ACTION** |
| | : | |
| | : | |
| | : | |
| **v.** | : | |
| | : | |
| **CITY OF PHILADELPHIA** | : | **NO. 23-1734** |

<u>**ORDER**</u>

**NOW,** this 18th day of July, 2023, upon consideration of the Joint Motion to Amend Judgment Pursuant to Federal Rule of Civil Procedure 60 (Doc. No. 11), it is **ORDERED** that the motion is **GRANTED**.

**IT IS FURTHERED ORDERED** that:

1.     The Court's June 8, 2023 Order is **VACATED**.

2.     **JUDGMENT** is entered in favor of plaintiffs Ross Gilson, Terrence Ledwell, Vern Lei, Edward McBride and Salvatore Santucci and against the defendant City of Philadelphia in the amount of Eight Thousand Five Hundred Dollars ($8,500.00).

3.     It is declared that the ordinance currently codified at § 10-820 of The Philadelphia Code is unenforceable.

4.     Defendant City of Philadelphia is **ENJOINED** from enforcing the ordinance currently codified at § 10-820 of The Philadelphia Code.

TIMOTHY J. SAVAGE, J.

Case ID: 241203018

## CERTIFICATE OF SERVICE AND COMPLIANCE
## WITH CASE RECORDS PUBLIC ACCESS POLICY

I hereby certify that I have served a copy of this Complaint and any accompanying documents upon the Defendants or their Attorneys of Record via electronic case filing.

I further certify that this filing complies with the provisions of the *Case Records Public Access Policy of the Unified Judicial System of Pennsylvania* that require filing confiential information and documents differently than non-confidential information and documents.

Respectfully Submitted,

**Andrew B. Austin**, Esq.
Pennsylvania Bar # 323768
*Attorney for Yosef Cohen*

P.O. Box # 54628
Philadelphia, Pennsylvania, 19148
+1 (610) 656-1956
austin@replev.in

DATED:      July 9th 2025

29