**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| Yosef Cohen, | : | |
| | : | Civil Action |
| Plaintiff, | : | |
| | : | No. 2:25-cv-04561-TJS |
| v. | : | |
| | : | |
| Trustees of the University of | : | |
| Pennsylvania, J. Larry Jameson, | : | |
| John L. Jackson Jr., Craig R. Carnaroli, | : | |
| Kathleen Shields Anderson, | : | |
| Gary Williams, Valdo Walker, | : | |
| Paul Guercio, and John Doe # 1–20, | : | |
| | : | |
| Defendants. | : | |

## <u>ORDER</u>

AND NOW, this _____ day of _____ 2025, upon consideration of the Motion to Dismiss Plaintiff's Complaint and, in the alternative, Motion to Strike of Defendants, Trustees of the University of Pennsylvania, J. Larry Jameson, John L. Jackson Jr., Craig R. Carnaroli, Kathleen Shields Anderson, Gary Williams, Valdo Walker, and Paul Guercio, and any response thereto, it is hereby **ORDERED** that Defendants' Motion is **GRANTED** and Plaintiff's Complaint is **DISMISSED**, in its entirety, with prejudice.

**BY THE COURT:**

_____

J.

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| Yosef Cohen,                    : | Civil Action |
|              : | |
|         Plaintiff,      : | No. 2:25-cv-04561-TJS |
|              : | |
|      v.             : | |
|              : | |
| Trustees of the University of    : | |
| Pennsylvania, J. Larry Jameson,    : | |
| John L. Jackson Jr., Craig R. Carnaroli,    : | |
| Kathleen Shields Anderson,    : | |
| Gary Williams, Valdo Walker,    : | |
| Paul Guercio, and John Doe # 1–20,    : | |
|              : | |
|         Defendants.    : | |

## <u>ALTERNATIVE ORDER</u>

AND NOW, this _____ day of _____ 2025, upon consideration of the Motion

to Dismiss Plaintiff's Complaint and, in the alternative, Motion to Strike of Defendants,

Trustees of the University of Pennsylvania, J. Larry Jameson, John L. Jackson Jr.,

Craig R. Carnaroli, Kathleen Shields Anderson, Gary Williams, Valdo Walker, and Paul

Guercio, and any response thereto, it is hereby **ORDERED** that Defendants' Motion is

**GRANTED**. It is **FURTHER ORDERED** that:

1. The factual matter alleged on pages 1-2 of the Complaint is **STRICKEN** and **DISMISSED**;

2. Paragraphs 16-33 and 47-48 of the Complaint are **STRICKEN** and **DISMISSED**; and

3. All claims against Defendants J. Larry Jameson, John L. Jackson, Jr., Craig Carnaroli, Kathleen Shields Anderson, and Gary Williams are **STRICKEN** and **DISMISSED** with prejudice.

                                    **BY THE COURT:**

                                 _____

                                             J.

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| Yosef Cohen, | : |
|                                Plaintiff, | :   Civil Action |
| | : |
|        v. | :   No. 2:25-cv-04561-TJS |
| | : |
| Trustees of the University of | : |
| Pennsylvania, J. Larry Jameson, | : |
| John L. Jackson Jr., Craig R. Carnaroli, | : |
| Kathleen Shields Anderson, | : |
| Gary Williams, Valdo Walker, | : |
| Paul Guercio, and John Doe # 1–20, | : |
| | : |
|                           Defendants. | : |

**DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S COMPLAINT
AND, IN THE ALTERNATIVE, MOTION TO STRIKE**

Defendants, Trustees of the University of Pennsylvania, J. Larry Jameson, John L. Jackson Jr., Craig R. Carnaroli, Kathleen Shields Anderson, Gary Williams, Valdo Walker, and Paul Guercio, hereby move this Honorable Court, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, to dismiss the Complaint of Plaintiff, Yosef Cohen, for failure to state a claim upon which relief can be granted. In the alternative, should the Court not dismiss Plaintiff's Complaint in its entirety, Defendants move the Court, pursuant to Rule 12(f), to strike certain scandalous and impertinent factual material contained in the Complaint. Defendants also move the Court, pursuant to Rule 10(b), to strike material that does not comply with the form of pleadings required under the Rules. And, lastly, Defendants move the Court to dismiss individual Defendants, J. Larry Jameson, John L. Jackson Jr., Craig R. Carnaroli, Kathleen Shields Anderson, and Gary Williams, from this matter for Plaintiff's failure to state a claim against them. The bases for this Motion are set forth in the accompanying Memorandum of Law.

**WHEREFORE**, Defendants respectfully request that this Honorable Court grant their Motion to Dismiss Plaintiff's Complaint and enter the attached proposed Order.

Respectfully submitted,

**TUCKER LAW GROUP, LLC**

Date:  August 18, 2025

/s/ Nancy Fisher Onaderu
Kathleen Kirkpatrick, Esquire
Nancy Fisher Onaderu, Esquire
Ten Penn Center
1801 Market Street, Suite 2500
Philadelphia, PA 19103
(215) 875-0609

*Attorneys for Defendants, Trustees of the University of Pennsylvania, J. Larry Jameson, John L. Jackson Jr., Craig R. Carnaroli, Kathleen Shields Anderson, Gary Williams, Valdo Walker, and Paul Guercio*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| Yosef Cohen, | : | |
| | : | Civil Action |
| Plaintiff, | : | |
| | : | No. 2:25-cv-04561-TJS |
| v. | : | |
| | : | |
| Trustees of the University of | : | |
| Pennsylvania, J. Larry Jameson, | : | |
| John L. Jackson Jr., Craig R. Carnaroli, | : | |
| Kathleen Shields Anderson, | : | |
| Gary Williams, Valdo Walker, | : | |
| Paul Guercio, and John Doe # 1–20, | : | |
| | : | |
| Defendants. | : | |

## MEMORANDUM OF LAW IN SUPPORT DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S COMPLAINT AND, IN THE ALTERNATIVE, MOTION TO STRIKE

Defendants, Trustees of the University of Pennsylvania, J. Larry Jameson, John L. Jackson Jr., Craig R. Carnaroli, Kathleen Shields Anderson, Gary Williams, Valdo Walker, and Paul Guercio, respectfully submit this Memorandum of Law in support of their Motion to Dismiss Plaintiff's Complaint and, in the alternative, Motion to Strike.

# TABLE OF CONTENTS

I.    INTRODUCTION.................................................................................................1

II.   FACTS ............................................................................................................2

  A.  Plaintiff's Arrest for Carrying a 12-inch Knife While Protesting for Israel in a Pro-Palestine Encampment. ........................................................................... 2

  B.  Plaintiff's Claims and Improperly Named Defendants. ............................................. 3

  C.  Plaintiff's Scandalous and Impertinent Allegations Against Penn and Other Uninvolved and Improperly Named Defendants. ................................................... 4

III.   ARGUMENT ...................................................................................................5

  A.  Motion to Dismiss pursuant to Rule 12(b)(6)..........................................................5

    1.  The Theories Underlying Plaintiff's Claims are Meritless and, as such, Plaintiff's Complaint Should Be Dismissed...................................................7

    2.  Plaintiff Fails to State a Claim for False Arrest/Imprisonment.............................11

    3.  Plaintiff Fails to State a Claim for Battery.................................................13

    4.  Plaintiff Fails to State a Claim for Malicious Prosecution. .....................................14

    5.  Plaintiff Fails to Allege Violations of His Pennsylvania Civil Rights because His Battery and False Imprisonment Claims Fail and Plaintiff Does Not Allege Malice.................................................................................................18

    6.  Plaintiff Fails to State a Claim for Negligence............................................19

  B.  Motion to Dismiss the Individual University Defendants from All Causes of Action 23

  C.  Defendants' Motion to Strike ................................................................................ 24

    1.  The Complaint's Scandalous and Impertinent Allegations Should be Stricken and Dismissed under Rule 12(f). .................................................................24

    2.  The Introductory Paragraphs on Pages 1-2 of the Complaint Should Be Stricken as Non-Compliant with Rule 10(b). ................................................26

# TABLE OF AUTHORITIES

Cases

Commonwealth v. Sinnott, 612 Pa. 321, 30 A.3d 1105, 1109 (Pa. 2011). .................... 18

Alleyne v. Pirrone, 180 A.3d 524, 540 (Pa. Commw. Ct. 2018)..................................... 14

Arndt v. Johnson & Johnson, 67 F. Supp. 3d 673, 676 (E.D. Pa. 2014)......................... 5

Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009............................................................... 6, 19

Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). .......................................... 5, 6, 19

Boseman v. Upper Providence Twp., 680 F. App'x 65, 71-72 (3d Cir. 2017) ............... 12

Brown v. Muhlenberg Twp., 269 F. 3d 205, 214 (3d Cir. 2001)..................................... 21

Brown-Dickerson v. City of Phila., No. 15-4940, 2016 U.S. Dist. LEXIS 54624 (E.D. Pa.
    Apr. 25, 2016) ............................................................................................................ 18

Burke v. Twp. Of Cheltenham, 742 F.Supp2d 660, 672 (E.D. Pa. 2010) ..................... 21

Cacciatore v. City of Phila., 2005 U.S. Dist. LEXIS 19064 (E.D. Pa. 2005)................... 21

C.C.H. v. Phila. Phillies, Inc., 940 A.2d 336, 340 n.4 (Pa. 2008)................................... 13

City of Canton v. Harris, 489 U.S. 378, 385 (1989). ...................................................... 21

City of Oklahoma City v. Tuttle, 471 U.S. 808, 816 (1985)............................................ 22

Commonwealth v. Durso, 86 A.3d 865, 870 (Pa. Super. Ct. 2013) ................................. 9

Commonwealth v. Mitchell, 554 A.2d 542, 548 (Pa. Super. Ct. 1989........................... 10

Dalrymple v. Brown, 701 A.2d 164, 170 (Pa. 1997)). .................................................... 13

D.P. Enters. v. Bucks County Cmty. Coll., 725 F.2d 943, 944 (3d Cir. 1984)................. 6

Evancho v. Fisher, 423 F.3d 347, 351 (3d. Cir. 2005).................................................... 6

Fagan v. Pittsburgh Terminal Coal Corporation, 299 Pa. 109, 149 A. 159 (1930). ...... 12

Fleck v. Trs. of the Univ. of Pa., 995 F. Supp .2d 390, 402 (E.D. Pa. 2014). .......... 10, 11

Givens v. Wal-Mart Stores, Inc., No. 22-2989, 2023 U.S. App. LEXIS 28805 (3d Cir.
    Oct. 31, 2023 ............................................................................................................. 16

Groman v. Twp. Of Manalapan, 47 F.3d 628, 637 (3d Cir. 1995) ................................. 22

Hammon v. Kennett Twp., CV 17-1586, 2017 WL 6039707 (E.D. Pa. Dec. 6, 2017),
    aff'd, 746 Fed.Appx. 146 (3d Cir. 2018) .................................................................... 22

Harris v. City of Philadelphia, 1998 U.S. Dist. LEXIS 12640 (E.D. Pa. Aug. 14,
    1998)). .......................................................................................................................... 15

Hernandez v. City of Philadelphia, CV 22-0027-KSM, 2022 WL 2290849 (E.D. Pa. June
    23, 2022)...................................................................................................................... 21

J.M.K. v. Luzerne Cty. Juvenile Det. Ctr., 372 F.3d 572, 586 (3d Cir. 2004),............... 22

Kelley v. General Teamsters, Local Union 249, 544 A.2d 940 (Pa. 1988). ................... 14

Kopec v. Tate, 361 F.3d 772, 780 (3d Cir. 2004). ......................................................... 14

Krentz v. CONRAIL, 589 Pa. 576, 583, 910 A.2d 20, 24 (2006), ................................. 20

M3 USA Corp. v. Hart, 2021 U.S. Dist. LEXIS 128899, 2021 WL 2917374 (E.D. Pa.
    2021)............................................................................................................................... 8

McInerey v. Moyer Lumber and Hardware, Inc., 244 F. Supp. 2d 393, 402 (E.D. Pa.
    2002)............................................................................................................................. 25

Monell v. N.Y. City Dep't of Soc. Servs., 436 U.S. 658 (1978). .................................... 20

Morse v. Lower Merion School Dist., 132 F.3d 902, 906 (3d Cir. 1997) ......................... 6

O'Keefe v. Lehigh Univ., No. 23-1235, 2024 U.S. App. LEXIS 853 (3d Cir. Jan. 12, 2024)................................................................................................................... 13

Okla. City v. Tuttle, 471 U.S. 808, 823-24, 105 S.Ct. 2427 (1985). ............................ 22

Pik v. University of Pennsylvania, et al., 2010 U.S. Dist. LEXIS 107346, 2010 WL 3933275 (E.D. Pa. Oct. 7, 2010) .................................................................................. 9

Rackin v. Univ. of Pa., 386 F. Supp. 992, 996 (E.D. Pa. 1974) ...................................... 9

Renk v. City of Pittsburgh, 537 Pa. 68, 76, 641 A.2d 289, 293 (1994). ........................ 11

River Rd. Dev. Corp. v. Carlson Corporation - Northeast, No. 89-7037, 1990 U.S. Dist. LEXIS 6201, 1990 WL 69085 (E.D. Pa. May 23, 1990). ............................................ 25

Santiago v. Warminster Twp., 629 F.3d 121, 130 (3d Cir 2020) .................................. 22

See Fleck v. Trs. of the Univ. of Pa., 995 F. Supp. 2d 390, 402 (E.D. Pa. 2014). ......... 21

Snider for Goldhirsh v. State Farm Fire & Cas. Co., 644 F. Supp. 3d 141, 147 (E.D. Pa. 2022)................................................................................................................... 24

Snyder v. Commonwealth 640 A.2d 490, 493 (Pa. Commw. Ct. 1994),......................... 8

Stango v. Rodden, 2001 U.S. Dist. LEXIS 15728 (E.D. Pa. Aug. 21, 2001)........... 15

Sterling v. Southeastern Pennsylvania Transp. Auth., 897 F. Supp. 893 (E.D. Pa. 1995). ............................................................................................................................. 6

Stoneking v. Bradford Area Sch. Dist., 882 F.2d 720, 725 (3d Cir. 1989). ................... 22

Taylor v. Mazzone, No. 15-6682, 2016 U.S. Dist. LEXIS 106781 (E.D. Pa. Aug. 12, 2016 ................................................................................................................... 17

United States v. Glasser, 750 F.2d 1197, 1206 (3d Cir. 1984)..................................... 16

Washington v. Brown, No. 16-02955, 2017 U.S. Dist. LEXIS 69565 (E.D. Pa. May 5, 2017)................................................................................................................... 17

Yurth v. Experian Info. Sols., Inc., 622 F. Supp. 3d 89, 97 (E.D. Pa. 2022) .................. 8

Zavodnick v. Gordon & Weisberg, P.C., No. 10-7125, 2012 U.S. Dist. LEXIS 78868 (E.D. Pa. June 6, 2012). ........................................................................................... 7

Statutes

18 Pa. C.S. § 2710(a).................................................................................................. 18

Phila. Code § 10-820........................................................................................... 7, 12, 16

## I.    INTRODUCTION

The Complaint purports to bring state-law claims alleging that Plaintiff's arrest for carrying a 12-inch knife at a protest was unlawful. The foundation of Plaintiff's claims, however, are his misguided theories that (1) the Philadelphia Ordinance making it illegal to carry a knife is unconstitutional and unenforceable pursuant to a federal court order issued in a different case upon a Rule 68 Offer of Judgment, and (2) Penn Police officers lack law enforcement authority under Pennsylvania law and, thus, every arrest they make is unconstitutional and unlawful. These allegations are devoid of factual or legal support. For these reasons, among others, Plaintiff fails to state any claim upon which relief can be granted and his Complaint should be dismissed.

As to the individual University Defendants, especially – President Jameson, Provost Jackson, Mr. Carnaroli, Vice President Shields Anderson, and Mr. Williams – Plaintiff fails to allege any facts against them that connect them to Plaintiff's arrest, whatsoever, let alone make them liable for constitutional violations, false arrest, battery, and negligence. Plaintiff merely concludes that, because they hold leadership positions at the University, they must be responsible for Plaintiff's allegedly unlawful arrest by Penn Police. Such unsupported conclusions do not state a claim against these individuals and they must be dismissed from this case.

Additionally, Plaintiff's Complaint contains many scandalous and impertinent allegations that only serve to prejudice Defendants and confuse the issues, as well as factual material alleged in violation of the pleading rules. As such, Defendants seek to strike such material from the Complaint.

## II.    FACTS[1]

### A.  Plaintiff's Arrest for Carrying a 12-inch Knife While Protesting for Israel in a Pro-Palestine Encampment.

This action stems from Plaintiff's arrest following a confrontation that arose between Plaintiff, a pro-Israel protester, and a group of pro-Palestine protesters on the University of Pennsylvania's ("Penn" or the "University") campus. (See Doc. 1-3, Complaint, at ¶¶ 34-43.) On April 28, 2024, a pro-Palestine encampment and pro-Israel counter-protest were occurring on Penn's campus approximately one block away from each other. (Id. at ¶ 34.) Plaintiff, who lives in Media, PA and was not a student, travelled to Penn's campus to join the pro-Israel counterprotest, wearing a pro-Israel t-shirt and carrying with him a large 12-inch knife in a sheath and a utility knife. (Id. at ¶¶ 35-36, 42.) Upon arrival, Plaintiff entered the Pro-Palestine encampment. (Id. at ¶ 37.) Penn Police stopped Plaintiff, questioned him, and advised him that it was not safe for him to enter the encampment. (Id. at ¶¶ 37-38.) Plaintiff proceeded to walk into the encampment and the Penn Police followed Plaintiff to ensure his safety. (Id. at ¶¶ 38-39.)

Plaintiff, who was dressed in Pro-Israel clothing, entered the Pro-Palestine encampment, notwithstanding warnings that it may be unsafe. There is no explanation for why Plaintiff was carrying two knives on his person in a charged and closed-quartered environment. Plaintiff began to engage and "argue" with the Pro-Palestine protestors, during which Penn Police spotted the sheathed 12-inch knife. (Id. at ¶¶ 40-

---

[1] The facts set forth in Plaintiff's Complaint are accepted as true only for purposes of this Motion in accordance with the requirements under the Federal Rules of Civil Procedure. Defendants expressly reserve the right to dispute at trial any of Plaintiff's factual allegations that are recited herein.

2

41.) Upon observing the knife in the midst of the confrontation, Penn Police escorted Plaintiff out of the encampment, arrested Plaintiff, and confiscated both the 12-inch knife and the utility knife on Plaintiff's person. (Id. at ¶¶ 41-42.) Plaintiff was transported to the Penn Police's station, issued a summary citation under Philadelphia Code § 10-820, and released. (Id. at ¶¶ 42-43.) Plaintiff's charges were dismissed on August 8, 2024 by the Philadelphia District Attorney's Office. (Id. at ¶ 46.)

**B. Plaintiff's Claims and Improperly Named Defendants.**

Plaintiff alleges his arrest was unlawful and constituted (1) a violation of Pennsylvania Civil Rights (Count 1), (2) false arrest/imprisonment (Count 2), (3) battery (Count 3), (4) malicious prosecution (Count 4), and (5) negligence (Count 5). (Id. at ¶¶ 68-131.) Plaintiff also seeks a declaratory judgment that Penn Police are not authorized to act as police officers or exercise law enforcement powers, and seeks to enjoin Penn Police from doing so (Count 6). (Id. at ¶ 137.)

Plaintiff asserts most of these claims[2] against several individuals who had no involvement in or relation to Plaintiff's arrest whatsoever. J. Larry Jameson is the President of the University of Pennsylvania (id. at ¶ 4), John L. Jackson, Jr. is the Provost of the University, (id. at ¶ 5), Craig R. Carnaroli was Senior Executive Vice President of the University (id. at ¶ 6), Kathleen Shields Anderson is Vice President for Public Safety at the University (id. at ¶ 7), and Gary Wiliams was the Chief of Penn Police (id. at ¶ 8). Plaintiff alleges no facts that connect these individuals to his arrest. Instead, Plaintiff broadly alleges that these individuals were responsible for Penn's response to the protests by sending emails or failing to act in a way that aligns with

---

[2] Count 4 (malicious prosecution) is brought against only the University, Detective Walker, and Detective Guercio.

Plaintiff's personal beliefs. (See id. at ¶¶ 24-29.) Such allegations do not support a cause of action against these individuals.

Plaintiff instituted this action with the filing of a Writ of Summons in the Court of Common Pleas of Philadelphia County against Defendants on December 27, 2024. Plaintiff filed the Complaint on July 9, 2025. Defendants removed this action to this Court on August 11, 2025, and now submit the within Motion to Dismiss and Motion to Strike.

Plaintiff's claims are premised on two theories: (1) the Philadelphia Ordinance making it illegal to carry a knife is unconstitutional and unenforceable pursuant to a federal court order issued in a different case upon a Rule 68 Offer of Judgment, and (2) Penn Police officers lack law enforcement authority under Pennsylvania law and, thus, every arrest they make is unconstitutional and unlawful. It is these theories that form the foundation of Plaintiff's claims that his arrest amounted to false imprisonment, battery, and malicious prosecution; that his Pennsylvania civil rights were violated; and that the University negligently trained its police officers. As set forth more fully below, Plaintiff's claims fail as both factually and legally unsupported and should be dismissed.

### C. Plaintiff's Scandalous and Impertinent Allegations Against Penn and Other Uninvolved and Improperly Named Defendants.

Plaintiff's Complaint includes many scandalous and impertinent allegations against Penn and various executives that are immaterial to his claims and amount to nothing more than his personal opinions regarding the history of the Hamas/Israel conflict (id. at pp. 1-2, ¶¶ 16-17), the multi-day protests and encampment by pro-Israel and pro-Palestine protestors on Penn's campus and the University's communications

and actions taken in response to the protests (id. at pp. 1-2, ¶¶ 18-33, 47-48). For example, Plaintiff alleges:

> Unknown to the public, the University of Pennsylvania had become a hotbed of covert antisemitism, throughout its student body, faculty, and administration. Persons of Jewish faith or ethnicity were actively discriminated against at the University of Pennsylvania, actively harassed, and made to feel unsafe. … After Israel invaded Gaza, overt antisemitism not only became normalized on campus, but was being endorsed by University of Pennsylvania faculty and its leadership.

(Id. at ¶¶ 18-19.) Such allegations are incendiary and baseless and have no relevance to Plaintiff's claim that his arrest was unlawful. And, alleging them against executives uninvolved with Plaintiff's arrest is frivolous and meritless. As set forth more fully below, such scandalous and immaterial allegations should be stricken from the Complaint.

## III. ARGUMENT

### A. Motion to Dismiss pursuant to Rule 12(b)(6)

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of the complaint. Arndt v. Johnson & Johnson, 67 F. Supp. 3d 673, 676 (E.D. Pa. 2014). While only a short and plain statement of the claim showing that the pleader is entitled to relief which gives the defendant "fair notice of what the claim is and the grounds upon which it rests" is required by Federal Rule of Civil Procedure 8, the plaintiff is required to plead "more than labels and conclusions, and a formulaic recitation of the element of a cause of action will not do." Id. at 677 (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)). In order to survive a motion to dismiss under Rule 12(b)(6), the plaintiff must have pled "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." (citing

Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)). The factual allegations must be "enough to raise a right to relief above the speculative level." Id. (citing Twombly, 550 U.S. at 555).

A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. Id. The Supreme Court has rejected the notion that a pleading will suffice where it simply puts forth "labels and conclusions" or provides "a formulaic recitation of the elements of a cause of action." Id. Likewise, "naked assertions devoid of further factual enhancement[s]" does not provide sufficient pleadings pursuant to Rule 8. Ashcroft v. Iqbal, 556 U.S. 662, 678 (citing Twombly, 550 U.S. at 557); see also Evancho v. Fisher, 423 F.3d 347, 351 (3d. Cir. 2005) (stating that a court need not credit either bald assertions or legal conclusions in a complaint when deciding a motion to dismiss).

The determination of whether to grant a motion to dismiss requires liberal interpretation of the complaint, accepting all factual allegations in the complaint as true, while drawing all plausible inferences in favor of the plaintiff. See Twombly, 550 U.S at 555; see also D.P. Enters. v. Bucks County Cmty. Coll., 725 F.2d 943, 944 (3d Cir. 1984). Yet, neither "bald assertions" nor "vague and conclusory allegations" are accepted as true. See Morse v. Lower Merion School Dist., 132 F.3d 902, 906 (3d Cir. 1997); see also Sterling v. Southeastern Pennsylvania Transp. Auth., 897 F. Supp. 893 (E.D. Pa. 1995). The court's obligation to accept allegations as true also does not apply to legal conclusions. See Iqbal, 556 U.S. at 678. Accordingly, the court must first identify conclusive allegations in the complaint that are not entitled to the assumption of truth and then consider whether the remaining allegations "plead[ ] factual content that

allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. at 678.

### 1. The Theories Underlying Plaintiff's Claims are Meritless and, as such, Plaintiff's Complaint Should Be Dismissed.

#### i. Phila. Code § 10-820 has not been repealed through legislation or found unconstitutional by any court.

Plaintiff alleges that the Philadelphia Ordinance under which he was arrested, Phila. Code § 10-820, was ordered "unenforceable" through a federal court order and, therefore, his arrest was unlawful. (Id. at ¶¶ 49-52, Exhibit A to the Complaint.) The order at issue was entered by the Hon. Timothy J. Savage on July 18, 2023, in an unrelated case brought by a group of plaintiffs against the City of Philadelphia (the "Order"). (Id.) This Order was entered upon the parties' Joint Motion to Amend Judgement to include language stating that "§ 10-820 of the Philadelphia Code is unenforceable." (See Doc. 1-4, Joint Motion to Amend Judgment and Offer of Judgement.) This language originates from the City of Philadelphia's Rule 68 Offer of Judgment to resolve the matter, which the plaintiffs accepted. (Id.) It is pursuant to the parties' agreement to these terms, and not any determination on the merits made by Judge Savage, that the Order Plaintiff relies upon came to be. Yet, Plaintiff attempts to use Judge Savage's Order as a sword against non-parties to support his claims here. (Id.) Plaintiff does not allege that § 10-820, which provides that no person shall possess a cutting weapon in public, has been repealed through legislation or been found unconstitutional by any court. Phila. Code § 10-820.

"[A]n Offer of Judgment is a contract." Zavodnick v. Gordon & Weisberg, P.C., No. 10-7125, 2012 U.S. Dist. LEXIS 78868, at *7 (E.D. Pa. June 6, 2012). As such,

"Rule 68 offers of judgment are governed by basic principles of contract law." <u>M3 USA</u> <u>Corp. v. Hart</u>, 2021 U.S. Dist. LEXIS 128899, 2021 WL 2917374, at *5 (E.D. Pa. 2021). As a general rule, only parties to a contract can enforce it. <u>Yurth v. Experian Info. Sols.,</u> <u>Inc.</u>, 622 F. Supp. 3d 89, 97 (E.D. Pa. 2022). Thus, Judge Savage's Order enjoining the *City of Philadelphia* from enforcing § 10-820 is only enforceable by and against the parties to that case. (Doc. 1-3 at Exhibit A.) Accordingly, to the extent Plaintiff's claims are based on the enforcement of this Order against Defendants, his claims fail and must be dismissed.

### ii. Penn Police's law enforcement authority is firmly established under Pennsylvania law.

Plaintiff alleges that Penn Police operate as "campus police" pursuant to 71 P.S. § 646-646.1, which empowers campus police at "state-aided" colleges and universities to exercise the same powers as police officers in their municipalities. (Doc. 1-3 at ¶ 53.) Plaintiff asserts that, to qualify as a state-aided university under § 646, Penn must have entered into "Articles of Agreement" with the Pennsylvania Department of Education (DOE), and that Penn failed to do so, stripping Penn Police of its law enforcement powers. (<u>Id.</u> at ¶¶ 54-61.) Contrary to Plaintiff's conclusions, Penn Police's law enforcement authority has been long established under Pennsylvania law.

Plaintiff relies upon <u>Snyder v. Commonwealth</u> 640 A.2d 490, 493 (Pa. Commw. Ct. 1994), to question Penn's "state-aided" status based on the alleged absence of an agreement between Penn and the DOE. (Doc. 1-3 at ¶ 54.) However, <u>Snyder</u>'s holding does not support Plaintiff's position. The plaintiff in <u>Snyder</u> challenged Carnegie Mellon University's (CMU) state-aided status and, therefore, its police department's authority under § 646. <u>Id.</u> The Commonwealth Court determined that CMU's statements

8

regarding its state allocations, alone, were insufficient to prove its state-aided status. Id. at 184-185. In its discussion of potential forms of evidence that might be appropriate, the court stated that evidence of an agreement between the state-aided University and the DOE was one way in which state-aided status could be proved, but not the only way. Id. at 184. The Pennsylvania Superior Court clarified this in Commonwealth v. Kneer:

> In reaching its conclusion, the Commonwealth Court indicated the Department could have met its burden of proof [of its authority] by introducing a copy of the court order making the appointment or requesting a continuance to secure the necessary evidence. Snyder does not require the Commonwealth in all cases involving private police, to introduce a copy of appointment to establish authority. **Rather, Snyder refers to only one method of establishing authority**.

743 A.2d 942, 945 (Pa. Super. Ct. 1999) (emphasis added).

Unlike CMU, Penn's state-aided status has been consistently recognized by Pennsylvania courts and its legislature over the past 50 years. See Rackin v. Univ. of Pa., 386 F. Supp. 992, 996 (E.D. Pa. 1974) (discussing at length the history of Penn's relationship with the Commonwealth and its state-aided status evidenced by the Commonwealth's appropriations, instructions, and influence over Penn); Pik v. University of Pennsylvania, et al., 2010 U.S. Dist. LEXIS 107346, 2010 WL 3933275 (E.D. Pa. Oct. 7, 2010) (holding that Penn was a "state-aided" institution receiving "substantial funds from the Commonwealth" but not a state actor for purposes of the plaintiff's § 1983 claims); Commonwealth v. Durso, 86 A.3d 865, 870 (Pa. Super. Ct. 2013) ("State-aided colleges and universities are Drexel University, Johnson College, Lake Erie College of Osteopathic Medicine, Philadelphia College of Osteopathic Medicine, Salus University, Thomas Jefferson University, **University of Pennsylvania**, and University of the Arts.").

9

Further, the State-Aided University Nonpreferred Appropriation Act of 2024, which provides funding for state-aided universities in the Commonwealth for the 2024-2025 fiscal year, includes "The University of Pennsylvania" in its definition of "State-Aided University."[3] Thus, there is no basis to question Penn's state-aided status in the Commonwealth of Pennsylvania, which has been affirmed time and time again.

Based on Penn's longstanding state-aided status and the credentials of Penn Police officers, the Eastern District determined that "Pennsylvania law endows the Penn Police Department with the plenary authority of a municipal police department … ." Fleck v. Trs. of the Univ. of Pa., 995 F. Supp. 2d 390, 402 (E.D. Pa. 2014). Such authority has been a foundational principle in other cases in which Penn Police's exercise of police authority was upheld. See, e.g., Commonwealth v. Mitchell, 554 A.2d 542, 548 (Pa. Super. Ct. 1989) (finding a Penn Police officer had authority to make an arrest on University property under § 646).

Moreover, Penn Police officers are authorized to operate as statewide municipal police pursuant to the Municipal Police Jurisdiction Act (MPJA), 42 Pa. C. S. § 8951, *et seq*. Under § 8953, any duly employed municipal police officer within Pennsylvania has the power and authority to enforce the laws of the Commonwealth within their primary jurisdiction, and beyond it under certain circumstances. As outlined in Fleck:

> Penn police officers are "highly-trained in a number of specialized areas including: emergency response, crisis and hostage negotiation, dignitary protection, traffic safety, motorcycle and bicycle patrol." The Department maintains a fifteen-person Detective Unit that conducts criminal investigations and crime scene analysis. The Penn Police Department has been accredited through the Commission on the Accreditation of Law Enforcement Agencies — a standard-setting body, since March of 2001. Its

---

[3] See https://www.billtrack50.com/billdetail/1624931.

officers have worked with a Drug Enforcement Administration task force …
and with FBI investigators on credit-card identity theft … .

995 F. Supp. at 402. Thus, Penn Police officers are not merely "campus police" that

derive their authority from their employment with Penn; but are also municipal police

officers whose authority extends state-wide under certain circumstances.

Accordingly, to the extent Plaintiff's claims are based on his theory that Penn

Police lack law enforcement powers, these allegations are disproven by the extensive

precedent affirming Penn Police's law enforcement authority under Pennsylvania law,

and Plaintiff's claims should be dismissed.

### 2. Plaintiff Fails to State a Claim for False Arrest/Imprisonment.

Plaintiff alleges false arrest/imprisonment against all Defendants. (Doc. 1-3 at ¶¶

74-89.) The elements of false imprisonment are (1) the detention of another person, and

(2) the unlawfulness of such detention. Renk v. City of Pittsburgh, 537 Pa. 68, 76, 641

A.2d 289, 293 (1994).

The only persons Plaintiff alleges detained him are Detectives Walker and

Guercio. (Doc. 1-3 at ¶ 76.) As such, this claim must be dismissed as to all other

Defendants, including the University, President Jameson, Provost Jackson, Mr.

Carnaroli, Vice President Shields Anderson, and Mr. Williams, because they had no

involvement in Plaintiff's arrest whatsoever.

To the extent Plaintiff alleges false arrest on the basis that Penn Police lack law

enforcement powers or the arresting ordinance was unenforceable, Plaintiff's claim fails

for reasons set forth *supra*. (See Part III(A)(1).)

Additionally, Plaintiff fails to state a claim for false arrest because the arresting

officers had probable cause to arrest Plaintiff. "A police officer may be held liable for ...

false imprisonment when ... he did not have probable cause to make an arrest."

Boseman v. Upper Providence Twp., 680 F. App'x 65, 71-72 (3d Cir. 2017) (citing Renk, 537 Pa. at 76.). Probable cause exists "whenever reasonably trustworthy information or circumstances within a police officer's knowledge are sufficient to warrant a person of reasonable caution to conclude that an offense has been committed by the person being arrested." United States v. Myers, 308 F.3d 251, 255 (3d Cir. 2022). An arrest based upon probable cause would be justified, regardless of whether the individual arrested was guilty or not. Renk, 537 Pa. at 76 (citing Fagan v. Pittsburgh Terminal Coal Corporation, 299 Pa. 109, 149 A. 159 (1930)).

Although Plaintiff contends that § 10-820 was unenforceable, which Defendants deny for the reasons set forth above, he fails to plead any facts suggesting that the arresting officers shared that belief or had any reason to doubt the ordinance's enforceability. Sec. 10-820 prohibits carrying a "cutting weapon" in public, which includes any knife that can be used as a weapon. Phila. Code. § 10-820(1)-(2). Plaintiff alleges that he was carrying a knife at a protest in public and that the arresting officers saw the knife and arrested him for violating the ordinance. (Doc. 1-3 at ¶ 41.) Thus, under the circumstances, the arresting offers had probable cause to conclude that Plaintiff was committing an offense in violation of an enforceable ordinance. Plaintiff fails to allege facts showing a lack of probable cause and, therefore, his false arrest/imprisonment claim fails and must be dismissed.

### 3. Plaintiff Fails to State a Claim for Battery.

Plaintiff alleges battery against all Defendants. "A battery is defined as a 'harmful or offensive contact' with the person of another." <u>C.C.H. v. Phila. Phillies, Inc.</u>, 940 A.2d 336, 340 n.4 (Pa. 2008) (citing <u>Dalrymple v. Brown</u>, 701 A.2d 164, 170 (Pa. 1997)).

First, Plaintiff does not allege any Defendants physically touched him other than the arresting officers, Detectives Walker and Guercio. (<u>See</u> Doc. 1-3 at ¶¶ 90-100.)  As such, this claim must be dismissed as to all other Defendants.

Second, to the extent Plaintiff alleges battery on the basis that Penn Police lack law enforcement powers or the arresting ordinance was unenforceable, Plaintiff's claim fails for reasons set forth *supra*. (<u>See</u> Part III(A)(1).)

Third, Plaintiff fails to state a claim for battery because Plaintiff does not allege that the arresting officers used excessive force. "A police officer may use reasonable force to prevent interference with the exercise of his authority or the performance of his duty. In making a lawful arrest, a police officer may use such force as is necessary under the circumstances to effectuate the arrest. The reasonableness of the force used in making the arrest determines whether the police officer's conduct constitutes an assault and battery." <u>Renk v. City of Pittsburgh</u>, 537 Pa. 68, 76, 641 A.2d 289, 293 (1994). Thus, a police officer may be liable for battery if he used excessive force in making an arrest. <u>See</u> <u>O'Keefe v. Lehigh Univ.</u>, No. 23-1235, 2024 U.S. App. LEXIS 853, at *2 (3d Cir. Jan. 12, 2024). "The test for determining whether that force is excessive is the same as in the Fourth Amendment context, i.e., whether the police officer's actions [were] objectively reasonable in light of the facts and circumstances." <u>Id.</u> (citations omitted).

Nowhere in the Complaint does Plaintiff allege excessive force by the arresting officers. Plaintiff alleges that he was escorted off Penn's campus, handcuffed, and transported in a vehicle to Penn Police's station. (Doc. 1-3 at ¶ 42.) There, Plaintiff's handcuffs were removed and he was held for approximately three hours until a citation was issued and he was released. (Id. at ¶ 43.) Plaintiff appears to premise his battery claim on the fact that he was handcuffed. (Id. at ¶ 94.) However, handcuffing alone is not considered use of excessive force without facts showing more, such as pain or injury. See Kopec v. Tate, 361 F.3d 772, 780 (3d Cir. 2004). Plaintiff alleges facts showing a routine arrest using only necessary force and nothing more. As such, Plaintiff's battery claim fails and must be dismissed.

### 4. Plaintiff Fails to State a Claim for Malicious Prosecution.

Plaintiff asserts his malicious prosecution claim against only the University, Detective Walker, and Detective Guercio. (Doc. 1-3 at ¶ 102.)

To the extent Plaintiff's malicious prosecution claim is based on his theory that the arresting ordinance was unenforceable or that Penn Police do not have law enforcement powers, Plaintiff's claim fails for the reasons set forth *supra*. (See Part III(A)(1)).

The elements of the cause of action of malicious prosecution are: 1) the defendants instituted proceedings against the plaintiff; 2) without probable cause and with malice; and 3) the proceedings terminated in favor of the plaintiff. Kelley v. General Teamsters, Local Union 249, 544 A.2d 940 (Pa. 1988). The law looks unfavorably at malicious prosecution claims, and they are both rare and arduous. Alleyne v. Pirrone, 180 A.3d 524, 540 (Pa. Commw. Ct. 2018). "Malicious prosecution is an action which

runs counter to obvious policies of the law in favor of encouraging proceedings against those who are apparently guilty . . . It never has been regarded with any favor by the courts, and it is hedged with restrictions which make it very difficult to maintain." Id. Plaintiff fails to plead facts establishing the elements of a malicious prosecution claim under Pennsylvania law and, for this additional reason, Plaintiff's claim must be dismissed.

### i. Defendants did not "institute proceedings" against Plaintiff.

Generally, "a plaintiff cannot proceed against a police officer for a claim of malicious prosecution because a prosecutor, not a police officer, 'initiates' criminal proceedings against an individual." Stango v. Rodden, 2001 U.S. Dist. LEXIS 15728, at *11 (E.D. Pa. Aug. 21, 2001) (citing Harris v. City of Philadelphia, 1998 U.S. Dist. LEXIS 12640 at *13 (E.D. Pa. Aug. 14, 1998)). A police officer may only be held to have 'initiated' a criminal proceeding if he knowingly provided false information to the prosecutor. Id.

Defendants cannot be said to have initiated the charges against Plaintiff because, as Plaintiff alleges, the District Attorney's Office, in its discretion, pursued the charges against Plaintiff. (Doc. 1-3 at ¶¶ 45-46.) Nor does Plaintiff allege that the arresting officers knowingly provided false information regarding the circumstances of Plaintiff's arrest. Under Pennsylvania law, Plaintiff cannot establish that Defendants initiated proceedings against Plaintiff. Thus, Plaintiff's malicious prosecution claim fails.

### ii. The arresting officers had probable cause to arrest Plaintiff.

The existence of probable cause is an "absolute defense" to a malicious prosecution claim. "The plaintiff has the burden of proving lack of probable cause and

despite the difficulty of establishing a negative, the requirement is rigidly enforced." Givens v. Wal-Mart Stores, Inc., No. 22-2989, 2023 U.S. App. LEXIS 28805, at *4 (3d Cir. Oct. 31, 2023). Probable cause exists "whenever reasonably trustworthy information or circumstances within a police officer's knowledge are sufficient to warrant a person of reasonable caution to conclude that an offense has been committed by the person being arrested." United States v. Myers, 308 F.3d 251, 255 (3d Cir. 2022). In a malicious prosecution action, "[t]he function of the court [is] to determine whether the objective facts available to the officers at the time of arrest were sufficient to justify a reasonable belief that an offense was being committed." United States v. Glasser, 750 F.2d 1197, 1206 (3d Cir. 1984)

As set forth *supra*, Plaintiff cannot establish that the arresting officers lacked probable cause to arrest him. Sec. 10-820 prohibits carrying a "cutting weapon" in public, which includes any knife that can be used as a weapon. Phila. Code. § 10-820(1)-(2). Plaintiff alleges that he was carrying a knife at a protest in public and that the arresting officers saw the knife and arrested him for violating the ordinance. (Doc. 1-3 at ¶ 41.) Plaintiff does not plead any knowledge or belief by the arresting officers that an arrest under the ordinance was improper. Based on the facts alleged, the arresting offers had probable cause to believe Plaintiff was committing an offense. Because Plaintiff fails to allege a lack of probable cause, other than his conclusions that the officers must have lacked probable cause because they lacked law enforcement powers and/or the ordinance is unenforceable, Plaintiff's malicious prosecution claim fails. (Doc. 1-3 at ¶¶ 107-108.)

### iii. Plaintiff fails to allege that Defendants acted with malice.

"Actual malice in the context of malicious prosecution is defined as either ill will in the sense of spite, lack of belief by the actor himself in the propriety of the prosecution, or its use for an extraneous improper purpose." <u>Washington v. Brown</u>, No. 16-02955, 2017 U.S. Dist. LEXIS 69565, at *21 (E.D. Pa. May 5, 2017) (citations omitted). "[A] showing of malice 'requires more than mere conclusory allegations; it cannot be asserted without corroborating factual specificity.'" <u>Taylor v. Mazzone</u>, No. 15-6682, 2016 U.S. Dist. LEXIS 106781, at *19 (E.D. Pa. Aug. 12, 2016) (citations omitted).

Plaintiff fails to allege facts showing malice by the arresting officers here. To the contrary, Plaintiff alleges that the officers repeatedly expressed concerns for his safety and arrested Plaintiff when, during a confrontation instigated by Plaintiff, they saw he was carrying a knife. (Doc. 1-3 at ¶¶ 38-41.) Plaintiff does not plead facts showing that the arresting officers acted with "ill will" or "spite" toward Plaintiff. <u>Washington</u>, No. 16-02955, at *21. As set forth *supra*, Plaintiff also does not allege that the arresting officers lacked belief that the arrest was proper. <u>Id.</u> Plaintiff's conclusions that the officers arrested Plaintiff for a purpose other than bringing him to justice because either (a) "it is impossible to bring someone to justice for something that isn't a crime" or (b) the officers interfered with his "right to counter-protest" do not qualify as "corroborating factual specificity." (Doc. 1-3 at ¶¶ 109-110); <u>Taylor</u>, No. 15-6682, at *19. Likewise, Plaintiff's bald conclusion that the arresting officers acted with malice toward him "because of his race, religion, and national origin" is completely devoid of factual support. (Doc. 1-3 at ¶ 73.) Without alleging any facts suggesting malice, Plaintiff fails to state a claim for malicious prosecution.

Accordingly, for all the foregoing reasons, Plaintiff's malicious prosecution claim must be dismissed.

### 5. Plaintiff Fails to Allege Violations of His Pennsylvania Civil Rights because His Battery and False Imprisonment Claims Fail and Plaintiff Does Not Allege Malice.

Plaintiff alleges that the arresting officers, Detectives Walker and Guercio, violated his Pennsylvania civil rights under 42 Pa. C.S. § 8309. (Doc. 1-3 at ¶¶ 69-73.) "Section 8309 creates a cause of action for personal injuries incurred as a result of ethnic intimidation." Brown-Dickerson v. City of Phila., No. 15-4940, 2016 U.S. Dist. LEXIS 54624, at *12-13 (E.D. Pa. Apr. 25, 2016) (citing 42 Pa. C.S. § 8309). "The offense of ethnic intimidation is the commission of other enumerated offenses 'with malicious intention toward the race, color, religion or national origin of another individual or group of individuals.'" Id. (citing 18 Pa. C.S. § 2710(a)). "Malicious intention means 'the intention to commit any act...motivated by hatred toward the race, color, religion or national origin of another individual or a group of individuals.'" Id. (citing 18 Pa. C.S. § 2710(c)). "The statute requires showing that, in the course of committing the predicate offense, the actor manifested a malicious intent toward the intended victim and had as motivation the hatred of the victim's race, color, religion, or national origin." Id. (citing Commonwealth v. Sinnott, 612 Pa. 321, 30 A.3d 1105, 1109 (Pa. 2011)).

Plaintiff's claim pursuant to § 8309 is based on his claims that Defendants committed assault, battery, and false imprisonment. (Doc. 1-3 at ¶ 72.) For the reasons

set forth *supra*, Plaintiff failed to plead facts sufficient to state claims for battery and false imprisonment.[4] (See Part III(A)(2) and (3).) Thus, Plaintiff's § 8309 claim must fail.

Additionally, for the reasons set forth *supra*, Plaintiff fails to allege any facts showing malicious intent to Plaintiff due to his race, color, religion, or national origin. (See Part (III)(A)(4)(iii).) To the contrary, Plaintiff alleges that the officers repeatedly expressed concerns for his safety and arrested Plaintiff when, during a confrontation instigated by Plaintiff, they saw he was carrying a knife. (Doc. 1-3 at ¶¶ 38-41.) Plaintiff's threadbare conclusion that the arresting officers "acted with malice toward Mr. Cohen because of his race, religion, and national origin" need not be accepted as true. (Doc. 1-3 at ¶ 73); Brown-Dickerson, No. 15-4941 at *14-15 ("The leap required from these predicate allegations to a conclusion of racial animus is not the type of reasonable inference that plaintiff is entitled to under Iqbal and Twombly.) Therefore, for this additional reason, Plaintiff's § 8309 claim must fail.

Accordingly, Count 1 of the Complaint must be dismissed.

### 6. Plaintiff Fails to State a Claim for Negligence.

Plaintiff vaguely alleges that the University and the individual University Defendants, President Jameson, Provost Jackson, Mr. Carnaroli, Vice President Shields Anderson, and Mr. Williams, were negligent. It is not entirely clear from the face of the Complaint the nature of the negligence claim Plaintiff alleges against the University and the individual University Defendants. Plaintiff merely pleads the elements of a negligence claim as set forth in Krentz v. CONRAIL, 589 Pa. 576, 583, 910 A.2d

---

[4] Plaintiff does not plead a claim for assault and, therefore, such a claim cannot support his cause of action for constitutional violations.

20, 24 (2006), and then alleges a series of vague duties that Defendants supposedly breached without any factual or legal support.

First, Plaintiff alleges that Defendants were negligent in failing to ensure the Penn Police possess authority to act as a law enforcement agency. (Doc. 1-3 at ¶¶ 117, 122.) Plaintiff's claim that Defendants were negligent because they did not ensure that Penn Police officers have law enforcement powers fails as a matter of Pennsylvania law, which affirms the Penn Police department's authority to act as a law enforcement agency. (See supra, Part III(A)(1)(ii).)

Then, Plaintiff alleges that the University and individual University Defendants were negligent in failing to properly train and supervise Penn Police officers on "non-discrimination," "the limits of their private authority," "proper de-escalation techniques," and/or "the protection of civil rights." (Doc. 1-3 at ¶¶ 118-120, 123-124.) Plaintiff fails to allege any facts or legal authority supporting his conclusion that the individual University Defendants breached any duty to train or supervise Penn Police officers. The President, Provost, and Vice Presidents of the University have no relation to the Penn Police department; nor do they oversee its daily functioning. Plaintiff fails to plead facts otherwise and merely concludes that, because they are in leadership positions at the University, they must be responsible for the Penn Police department. This legal conclusion without factual support is insufficient and, as such, this claim must be dismissed against the individual University Defendants.

Construing the Complaint liberally, Plaintiff appears to assert a Monell claim against the University. See Monell v. N.Y. City Dep't of Soc. Servs., 436 U.S. 658 (1978). A Monell claim may be established where plaintiff alleges an unconstitutional

policy or custom of a municipality led to their injuries. <u>Hernandez v. City of Philadelphia</u>, CV 22-0027-KSM, 2022 WL 2290849, at *2 (E.D. Pa. June 23, 2022). The Trustees of the University of Pennsylvania is treated as a state actor for purposes of a <u>Monell</u> claim. <u>See</u> <u>Fleck v. Trs. of the Univ. of Pa.</u>, 995 F. Supp. 2d 390, 402 (E.D. Pa. 2014).

    "A governmental policy or custom can be established in two ways. Policy is made when a decision maker possessing final authority to establish municipal policy with respect to the action issues an official proclamation, policy, or edict. A course of conduct is considered to be a custom when, though not authorized by law, such practices of state officials are so permanent and well settled as to virtually constitute law." <u>Burke v. Twp. Of Cheltenham</u>, 742 F.Supp2d 660, 672 (E.D. Pa. 2010) (internal citations omitted). In asserting a <u>Monell</u> claim, a plaintiff must also show that there is a direct casual link between the municipal policy or custom and the alleged constitutional deprivation. <u>Brown v. Muhlenberg Twp.</u>, 269 F. 3d 205, 214 (3d Cir. 2001) (quoting <u>City of Canton v. Harris</u>, 489 U.S. 378, 385 (1989)).

    Further, "a plaintiff must show that a reasonable municipal policymaker had knowledge of a pattern or prior incidents or knowledge of similar violations of constitutional rights and failed to take adequate measures to ensure the particular right in question." <u>Cacciatore v. City of Phila.</u>, 2005 U.S. Dist. LEXIS 19064 *5 (E.D. Pa. 2005) (internal quotations omitted). It has been held that, "a single incident of unconstitutional activity is not sufficient to impose liability under <u>Monell</u> unless proof of the incident includes proof that it was caused by an existing unconstitutional municipal policy, which policy can be attributed to the municipal policy [or] policy maker." <u>Groman</u>

v. Twp. Of Manalapan, 47 F.3d 628, 637 (3d Cir. 1995) (quoting Okla. City v. Tuttle, 471 U.S. 808, 823-24, 105 S.Ct. 2427 (1985)).

In order to bring a Monell claim under the theory of supervisor liability or against an individual, "a plaintiff must show that the defendant (1) was a person who (2) under the color of state law, (3) caused a (4) deprivation of constitutional rights." Hammon v. Kennett Twp., CV 17-1586, 2017 WL 6039707, at *2 (E.D. Pa. Dec. 6, 2017), aff'd, 746 Fed.Appx. 146 (3d Cir. 2018) (quoting City of Oklahoma City v. Tuttle, 471 U.S. 808, 816 (1985)). In order to establish supervisory liability, a plaintiff must either plead that defendants directed others to violate their rights, Santiago v. Warminster Twp., 629 F.3d 121, 130 (3d Cir 2020) (quoting A.M. ex rel. J.M.K. v. Luzerne Cty. Juvenile Det. Ctr., 372 F.3d 572, 586 (3d Cir. 2004)), or that "with deliberate indifference to the consequences, established and maintained a policy, practice or custom which directly caused [the] constitutional harm." Stoneking v. Bradford Area Sch. Dist., 882 F.2d 720, 725 (3d Cir. 1989).

Plaintiff has not alleged facts showing the existence of a practice, policy or custom that led to his constitutional rights being violated; nor does Plaintiff allege a "pattern" of "similar violations." Cacciatore, 2005 U.S. Dist. LEXIS 19064 *5. The focus of Plaintiff's Complaint are his allegations that he was arrested under an ordinance that is unenforceable and by Penn police officers without law enforcement authority. As set forth above, these claims are unsupported. (See supra, Part (III)(A)(1).)

Plaintiff otherwise asserts vague and unfounded conclusions that the University "endorsed" widespread antisemitism and discrimination as a general policy. (Doc. 1-3 at ¶ 18.) Plaintiff fails, however, to identify any specific and established policy, practice,

custom, or direction by Penn or its leadership to support this wild accusation and/or to show that Penn directly caused any constitutional harm or was deliberately indifferent to such harm. Plaintiff merely complains that Defendants' actions taken in response to the protests did not conform to his expectations and opinions regarding the Hamas/Israel conflict. Plaintiff's personal opinions and unsupported conclusions are insufficient. Moreover, Plaintiff was not deprived of any constitutional right when he was lawfully arrested for violating an active ordinance and ultimately had his claims dismissed.

Accordingly, Plaintiff's negligence claim fails and should be dismissed.

### B. Motion to Dismiss the Individual University Defendants from All Causes of Action

Plaintiff purports to assert claims against several individuals in leadership positions at the University who had no involvement in, or relation to, Plaintiff's arrest whatsoever. J. Larry Jameson is the President of the University of Pennsylvania (Doc. 1-3 at ¶ 4), John L. Jackson, Jr. is the Provost of the University, (id. at ¶ 5), Craig R. Carnaroli was Senior Executive Vice President of the University (id. at ¶ 6), Kathleen Shields Anderson is Vice President for Public Safety at the University (id. at ¶ 7), and Gary Wiliams was the Chief of Penn Police (id. at ¶ 8). Plaintiff fails to allege any facts showing that these individuals were involved in Plaintiff's arrest, let alone that they are liable for constitutional violations, false arrest, battery, or negligence. (See supra, Parts III(A)(2-6).)

Rather, Plaintiff merely concludes that, because these executives are in leadership positions at the University, they must be responsible for Plaintiff's arrest. Plaintiff's facts pled in support of this conclusion are only that some individuals – President Jameson, Provost Jackson, and Mr. Carnaroli – sent emails to the Penn

community during the protests. (See Doc. 1-3 at ¶ 24.) Notably, the only *fact* pled about Vice President Shields Anderson and Mr. Williams is their respective titles. (See id. at ¶¶ 7-8, 27.) Plaintiff does not plead any specific actions taken by any of these individuals; he only pleads, "upon information and belief," that these individuals were in "control" of Penn's response to the encampment. In truth, Plaintiff's claims against these individuals are entirely based on his *opinion* that they failed to act in a way that aligned with Plaintiff's personal beliefs. This is wholly deficient. (Id. at ¶ 27.)

Such allegations do not support any of Plaintiff's causes of action against these individuals. Accordingly, Plaintiff's causes of actions against President Jameson, Provost Jackson, Mr. Carnaroli, Vice President Shields Anderson, and Mr. Williams are frivolous and meritless and must be dismissed.

### C. **Defendants' Motion to Strike**

#### 1. **The Complaint's Scandalous and Impertinent Allegations Should be Stricken and Dismissed under Rule 12(f).**

Federal Rule of Civil Procedure 12(f) permits a court to "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). A matter in a pleading is "immaterial when it has no essential or important relationship to the claim for relief." Snider for Goldhirsh v. State Farm Fire & Cas. Co., 644 F. Supp. 3d 141, 147 (E.D. Pa. 2022) (internal quotations omitted). An allegation is "impertinent when it does not pertain to the issues raised in the complaint." Id. Scandalous matter "improperly casts a derogatory light on someone, most typically on a party to the action." Id.

A court will grant a motion to strike "to clean up the pleadings, streamline litigation, and avoid unnecessary forays into immaterial matters." <u>McInerey v. Moyer Lumber and Hardware, Inc.</u>, 244 F. Supp. 2d 393, 402 (E.D. Pa. 2002). While courts have "considerable discretion in disposing of a motion to strike," said motions are typically granted where "the allegations have no possible relation to the controversy and may cause prejudice to one of the parties, or if the allegations confuse the issues in the case." <u>River Rd. Dev. Corp. v. Carlson Corporation - Northeast</u>, No. 89-7037, 1990 U.S. Dist. LEXIS 6201, 1990 WL 69085, at *3 (E.D. Pa. May 23, 1990).

Plaintiff's Complaint includes many allegations that are immaterial to his claims, confuse the issues, and are intended only to paint Defendants in a derogatory and prejudicial light. Indeed, the first approximately 17 paragraphs of the "Factual Background" are comprised of nothing more than Plaintiff's personal opinions regarding the history of the Hamas/Israel conflict (<u>id.</u> at pp. 1-2, ¶¶ 16-17), the multi-day protests and encampment by pro-Israel and pro-Palestine protestors on Penn's campus and the University's communications and actions taken in response to the protests (<u>id.</u> at pp. 1-2, ¶¶ 18-33, 47-48). Many of these paragraphs include highly prejudicial allegations against Defendants that have no relevance to Plaintiff's unlawful arrest claims. For example, Plaintiff alleges:

> Unknown to the public, the University of Pennsylvania had become a hotbed of covert antisemitism, throughout its student body, faculty, and administration. Persons of Jewish faith or ethnicity were actively discriminated against at the University of Pennsylvania, actively harassed, and made to feel unsafe. … After Israel invaded Gaza, overt antisemitism not only became normalized on campus, but was being endorsed by University of Pennsylvania faculty and its leadership.

(Id. at ¶¶ 18-19.) Such allegations are purely incendiary and serve no valid purpose in this action. For these reasons, the factual allegations contained on pages 1-2 and in paragraphs 16-33 and 47-48 should be stricken from the Complaint.

**2. The Introductory Paragraphs on Pages 1-2 of the Complaint Should Be Stricken as Non-Compliant with Rule 10(b).**

Federal Rule of Civil Procedure 10 sets forth the required form of pleadings. Fed. R. Civ. P. 10. Rule 10(b) provides that "[a] party must state its claims or defenses in *numbered paragraphs*, each limited as far as practicable to a single set of circumstances." Fed. R. Civ. P. 10(b) (emphasis added). The first two pages of Plaintiff's Complaint are in clear violation of this Rule. Pages 1-2 contain a factual narrative instead of numbered paragraphs as required by Rule 10(b). As such, the matter alleged on pages 1 to 2 of the Complaint should be stricken.

Respectfully submitted,

**TUCKER LAW GROUP, LLC**

Date:  August 18, 2025

/s/ Nancy Fisher Onaderu
Kathleen Kirkpatrick, Esquire
Nancy Fisher Onaderu, Esquire
Ten Penn Center
1801 Market Street, Suite 2500
Philadelphia, PA 19103
(215) 875-0609

*Attorneys for Defendants, Trustees of the University of Pennsylvania, J. Larry Jameson, John L. Jackson Jr., Craig R. Carnaroli, Kathleen Shields Anderson, Gary Williams, Valdo Walker, and Paul Guercio*

## <u>CERTIFICATE OF SERVICE</u>

I, Nancy Fisher Onaderu, Esquire, do hereby certify that on this date, I caused a copy of the foregoing document to be electronically filed through the Court's ECF System and that a notice of electronic filing will be generated to all counsel of record, thereby constituting service of the document.


Dated:   August 18, 2025          /s/ Nancy Fisher Onaderu
                                  Nancy Fisher Onaderu, Esq.